FLEMING MANUFACTURING CO., INC., Petitioner,

v.

CAPITOL BRICK, INC., Respondent.

No. 14300.

Court of Appeals of Texas, Austin.

June 24, 1987.

Rehearing Denied Aug. 12, 1987.

John W. Stayton, McGinnis, Lochridge & Kilgore, Austin, for petitioner.

Douglass D. Hearne, James A. Vaught, Hearne, Knolle, Lewallen, Livingston & Holcomb, Austin, for respondent.

Before POWERS, GAMMAGE and CARROLL, JJ.

CARROLL, Justice.

Petitioner, Fleming Manufacturing, originally appealed to this Court by writ of error from a default judgment rendered in favor of Capitol Brick. We sustained Fleming's first point of error and set aside the trial court's judgment for want of personal jurisdiction on the grounds that Capitol Brick improperly attempted to obtain service of process on a foreign corporation, by serving an *employee* of the Secretary of State rather than the Secretary of State *personally* as required by the express language of Tex.Rev.Civ.Stat.Ann. art. 2031b (1964).[1] *Fleming Manufacturing Co., Inc. v. Capitol Brick Inc.*, 703 S.W.2d 365 (Tex. App.1986).

The Supreme Court subsequently reversed our judgment and remanded the cause to this Court for a consideration of Fleming's remaining factual sufficiency points. *Capitol Brick, Inc. v. Fleming Manufacturing Co., Inc.*, 722 S.W.2d 399 (Tex.1986). We will reverse the judgment of the district court and remand the cause for new trial on the issue of damages only.

## CONTROVERSY

In December of 1982, Capitol Brick purchased a "brick mold" from Fleming. Joe Sprott, president of Capitol Brick, testified that the mold was purchased based on representations that it was operational and could be used in the manufacture and production of ten inch bricks. Sprott also testified that both companies had on previous occasions transacted business together and based upon those dealings, Fleming was knowledgeable of the purposes for which this particular ten inch brick mold was needed. Capitol Brick paid Fleming $10,585 for the mold.

Soon after acquiring the mold, Capitol Brick uncovered several shortcomings and accordingly notified Fleming of those problems. In response, Fleming unsuccessfully attempted to repair the mold. Capitol Brick then proceeded to contract with a third party to repair the mold and incurred $1,411.20 in repair costs.

On December 2, 1983, Capitol Brick sued Fleming under the Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.50(a)(2) (Supp.1987), claiming Fleming had breached both express and implied warranties concerning the operability of the mold and its fitness for the purposes for which it was sold. Service of citation on Fleming was made through the Secretary of State. No answer was filed.

At the default judgment hearing, Sprott testified generally that *as a result of the defective mold,* Capitol Brick's mold press which would have produced this particular ten inch brick was idle for 11½ weeks; that during normal conditions the press would have produced some 1,750,000 bricks; and that these bricks would have sold for $120 per thousand, or some $207,000. Sprott also indicated a 25% net profit figure which translates into lost profits of $51,750. This was the only evidence concerning Capitol Brick's unliquidated damage claim. The trial court rendered judgment in favor of Capitol Brick for $260,685.28.[2]

---

1. Article 2031b was codified without substantive revisions as part of Chapter 17 of the Civil Practice and Remedies Code, 1985 Tex.Sess. Law.Serv., ch. 959, § 1, at 7083-87.

2. This figure is compromised largely of improperly trebled damages at the trial court level. The Supreme Court has indicated that since Capitol Brick *specifically pleaded* for actual damages in the amount of $59,671.32, it was improper for the court to render judgment in excess of that amount. Moreover, assuming the actual damages were found to be $59,671.32, treble damages under the DTPA should have been calculated in the following manner:

| | |
|---|---|
| (1) three times the first $1000 of actual damages | $3,000.00 |
| (2) not more than three times the total amount of actual damages in excess of $1,000 ($58,671.32 × 3) | $176,013.96 |
| TOTAL | $179,013.96 |

*See Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex.1985).

During oral argument before this Court, Fleming attempted to contest the factual sufficiency of evidence to support the reasonableness and necessity of repair costs incurred by Capitol Brick. This avenue of attack is however precluded since the original point of error, number seven, was a "no evidence point" only, which

In the original proceeding before this Court, Fleming raised nine points of error. The Supreme Court disposed of all but two points. The remaining issues which we must examine may be summarized as follows: (1) is the proof presented at the default judgment hearing factually sufficient to support Capitol Brick's claim for lost profits of $51,750; and (2) is the same evidence also factually sufficient to establish the requisite causal nexus between damages and liability?[3] Assuming either point is sustained, we must then also address a third issue—whether the cause should be remanded only for consideration of damages, or whether a new trial on both liability and damages should be ordered. This third issue involves the additional determination of whether Fleming's failure to answer admitted all factual allegations concerning its "knowing" conduct.

### DISCUSSION AND HOLDINGS

■■■ 1. *Lost Profits.* To recover for lost profits, the amount of loss must be shown with reasonable certainty by competent evidence. *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938). However, the loss need not be susceptible to exact calculation. *See White v. Southwestern Bell Telephone Company, Inc.,* 651 S.W.2d 260 (Tex.1983). Generally, where the business is shown to have been established and making a profit at the time when the contract was breached or tort committed, such preexisting profit, together with other facts and circumstances, may indicate with reasonable certainty the amount of profits lost. *Southwest Battery, supra* at 1099. The plaintiff may introduce proof of the amount of business done in a corresponding period of time, not too remote, and the business *during* the time for which recovery is sought. *Id.* Normal increases in business which might have been expected in light of past develop-

ment and existing conditions may also be considered in determining lost profits. *Id.*

Fleming contends that the proof presented at the default hearing failed to establish that: (1) Capitol Brick had a "proven track record"; (2) the bricks to have been produced from the mold would have been sold; (3) the market demand, if any, for the ten inch bricks could not have been met from existing inventory; (4) the lapse in production occurred at a time in which Capitol Brick was operating under "normal conditions"; and (5) the customers who would have purchased this particular type of brick from Capitol Brick actually took their business elsewhere. In other words, Fleming maintains that the evidence presented was factually insufficient to establish the "reasonable certainty" of any lost profits.

In response to this position, Capitol Brick argues that under the established law regarding lost profits, it was only required to show that its profits were ascertainable with a reasonable degree of certainty, and proof of the number of bricks which the presses could have produced along with the then prevailing market price for those bricks and the average net profit thereby obtained satisfied this burden.

■■■ Although the law does not demand perfect proof of lost profits, it does demand that the party attempting to establish with reasonable certainty its lost profits, do so by proving the factual data which supports their claim. *International Harvester Company v. Kesey,* 507 S.W.2d 195 (Tex.1974). At the default judgment hearing, Capitol Brick was required to prove at a minimum, that the 1,750,000 bricks would have been produced, and would have been sold. Proof of existing contracts for ten inch bricks, or proof of normal market demand increases for this type of brick which could be expected in light of past developments and presently existing conditions, would have satisfied that burden.[4] We

---

the Supreme Court overruled. *Capitol Brick, Inc. v. Fleming Manufacturing Co., supra.*

**3.** These remaining issues are contained in Fleming Manufacturing's points of error eight and nine raised in their original appeal.

**4.** Capitol Brick also makes the argument that evidence of lost profits need only demonstrate "intelligible estimates" of lost profits. In other words, there need exist only evidence allowing an inference that some profit would have been made. *Davis v. Small Business Investment Co. of Houston,* 535 S.W.2d 740 (Tex.Civ.App.1976,

cannot, however, conclude that *lost profits* were proven at the default hearing with that degree of reasonable certainty required when the only evidence offered concerned *anticipated or potential production. See e.g., Mesa Agro v. R.C. Dove & Sons,* 584 S.W.2d 506 (Tex.Civ.App.1979, writ ref'd n.r.e.) (damages uncertain and speculative where number of cattle to be pastured was not specified in the contract, and testimony as to how many cattle might be pastured at any given time were based on assumptions as to how many cattle could be pastured and not how many would have been pastured had the contract not been terminated). Fleming's point of error number eight is sustained.

Because we conclude that the cause must be remanded for a new trial, we do not address the remaining factual sufficiency point. The only question left for our attention is whether the trial on remand should be limited to damages, or should include both damages and liability.

2. *Issues on Remand.* (a) *Liability:* Fleming contends that it cannot effectively defend itself on the issue of damages without an ability to offer proof on liability. In other words, Fleming claims that it is impossible to separate proof on the issue of whether the defective mold resulted in lost profits from proof of the nature and existence of a defect. We disagree.

 When a default judgment is taken on an unliquidated claim, all allegations of fact set out in the petition are deemed admitted, *except* the amount of damages. *Stoner v. Thompson,* 578 S.W.2d 679 (Tex. 1979). The effect, therefore, of a no-answer default judgment is an admission of liability upon a cause of action if the action is properly alleged in the plaintiff's petition. *See Southland Mower Co. v. Jordan,* 587 S.W.2d 215 (Tex.Civ.App.1979, writ ref'd n.r.e.). As a consequence, when a defendant appeals from a no-answer default judgment, the liability issues are not contested within the meaning of Tex.R. App.P.Ann. 81(b)(1) (Supp.1987).[5] *See* 31 Wicker, *Texas Civil Trial and Appellate Procedure* § 381 (Tex.Practice 1986). Hence, if a remand is ordered after the appellate court sustains an evidentiary point regarding the unliquidated damages claim, the appellate court should order a new trial only on the damages issue.[6]

writ ref'd n.r.e.). Even if we accept this position, we still cannot determine from the evidence presented what the lost profits would be since no evidence was presented concerning how many bricks would have been sold.

During oral argument, Fleming also took the position that proof of lost profits should be based on "objective documentation," *e.g.,* routinely kept business records. *See Automark of Texas v. Discount Trophies,* 681 S.W.2d 828 (Tex.App.1984, no writ). We do not address this "preference" of one type of proof over another since we conclude that under the evidence presented, Capitol Brick failed to sufficiently prove its lost profits.

5. Texas R.App.P. 81(b)(1) provides in relevant part:

 * * * * * *

... and if it appears to the court that the error only affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.

6. Under *Morgan v. Compugraphic, supra,* the Supreme Court divided the typical personal injury case into two distinct causal nexuses: (1) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries. When the defendant fails to file an answer in a suit involving an unliquidated damages claim, he admits the first causal nexus, but not the latter. Texas R.Civ.P.Ann. 243 (1979) requires that a plaintiff put on evidence as to damages in a default hearing involving an unliquidated claim. Thus, a defendant, on appeal, may on an evidentiary basis attack the plaintiff's recovery of damages by arguing that the plaintiff's injuries were not caused by the event made the basis of the suit. The reasoning here is that the mere fact the defendant has defaulted does not give the plaintiff the right to recover damages which did not arise from his cause of action. Based upon *Morgan v. Compugraphic, supra,* we see no reason why Fleming Manufacturing should not be allowed on remand to show that Capitol Brick's alleged lost profits were not the result of factors related to Fleming's conduct, but were the result of other factors or would nonetheless have arisen on account of the unavailability of materials, for example.

*Morgan v. Compugraphic Corp.,* 675 S.W.2d 729 (Tex.1984); *Southland Mower, supra.*

██ The logic here is clear. When Fleming failed to file an answer after being properly served, it necessarily admitted all allegations of fact set out in the petition, except for the amount of damages. Accordingly, Fleming could not on appeal attack those factual allegations concerning liability. *Southland Mower, supra* at 217. To allow Fleming to now contest its liability on remand would not only contravene the principles announced in *Morgan v. Compugraphic, supra,* but would also remove all legal disabilities incurred by Fleming when it failed to file an answer. We cannot on one hand articulate the rule that a party admits all factual allegations concerning liability when he fails to answer, and then allow such a party to nonetheless contest its liability on remand by arguing that the liability and damages issues are inextricably intertwined.

(b) *"Knowing" Conduct:* The more difficult question which we must address, however, is whether on remand Fleming may contest the issue of its "knowing" conduct. Capitol Brick claims that all factual allegations relating to Fleming's "knowing" conduct were deemed admitted when Fleming failed to answer. As the argument goes, Capitol Brick contends that should this case be remanded, Fleming is only entitled to contest the amount of actual damages and not the trebling of those damages under the DTPA.

We conclude that by failing to answer, Fleming admitted to having "knowingly" breached certain warranties made to Capitol Brick concerning the brick mold. *Cf. First National Bank of Irving v. Shockley,* 663 S.W.2d 685 (Tex.App.1983, no writ). However, this fact, in and of itself, does not mean that whatever actual damages, if any, are awarded on remand must be mechanically trebled.

The DTPA provides for two different types of damages. First, a prevailing plaintiff under § 17.50 is entitled to two times that portion of actual damages which does not exceed $1,000. This is the "mini-mum punishment" imposed under the DTPA. Second, if the prevailing plaintiff under § 17.50(a)(2) can, in addition, demonstrate that the defendant was aware of his conduct constituting the breach of warranty, the trier of fact *may award in its discretion* not more than three times the amount of actual damages in excess of $1,000. *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239 (Tex.1985).

██ This second type of "additional damages" allows the trier of fact to tailor the amount of the penalty based on the actor's conduct, much in the same way the court or jury assesses punitive damages. *See e.g., Blue Island, Inc. v. Taylor,* 706 S.W.2d 668 (Tex.App.1985, writ ref'd n.r.e.) (the purpose of the additional damages is to punish the wrongdoer for knowingly violating the DTPA; hence, the jury's assessment of the guilt of the violator is the main factor in its award of the amount of discretionary damages). Since the amount of "additional damages" which may be imposed under the DTPA lies within the discretion of the trier of fact, the damage award is by nature unliquidated. *See First National Bank of Irving v. Shockley, supra.* As a consequence, even assuming that the defendant admits to having knowingly breached certain warranties made to the plaintiff, the plaintiff must still show that the extent of the defendant's knowledge warrants imposing additional damages under § 17.50(b)(1). In other words, although Fleming by its failure to answer admitted that it was aware of its conduct constituting a breach of warranty, Fleming did not *further* admit that the extent of its knowledge warranted the automatic imposition of "exemplary type damages" under § 17.50(b)(1).

Since the determination of whether Capitol Brick is entitled to recover under the statutory penalty provisions of the DTPA depends on its ability to establish actual damages, we conclude that the entire question of damages must be remanded to the trial court. Although Fleming may not contest whether its conduct was "knowing," it may however contest both the amount of actual damages, if any, and the extent of its knowledge which warrants an

award of "additional damages" under § 17.50(b)(1). If Capitol Brick is successful in establishing actual damages, the trial court may in its discretion award Capitol Brick up to three times the amount of actual damages which exceeds $1,000. The trial court's determination in this regard should be based on the evidence as it relates to the extent of Fleming's knowledge and the character of Fleming's conduct which violates the DTPA.

The judgment of the district court is reversed and the cause remanded for a new trial on the issue of damages only.