**HENRY S. MILLER COMPANY,**
**Appellant,**

v.

**Mark HAMILTON and Dina**
**Hamilton, Appellees.**

**No. 01–90–00303–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 11, 1991.

Michael J. Mazzone, Houston, for appellant.

Jill Duncan Hurd, Karen M. Taylor, Houston, for appellees.

Before O'CONNOR, HUGHES and BASS, JJ.

## OPINION

O'CONNOR, Justice.

We withdraw our earlier opinion of January 31, 1991, and substitute the following. We now reverse and remand.

Henry S. Miller Company ("Miller") seeks review by writ of error from a default judgment. Miller does not contest liability nor complain of the award of actual damages and attorney's fees. Miller contests the award of $100,000 "additional" damages under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA)[1] and argues that it was not served with the petition on which the default judgement was rendered.

In the fall of 1987, Mark and Dina Hamilton relied on a multiple listing service to locate a house to lease. The real estate listing for the house they leased was prepared by Miller. The listing noted the house had flooded in 1983 during Hurricane Alicia. It did not note any other instances of flooding. On May 18, 1989, after the Hamiltons moved into the house, a flood destroyed all their household goods.

The Hamiltons sued Miller alleging fraud, breach of contract, negligence, and violations of the DTPA. The Hamiltons' petition alleged that Miller, acting as realtor, knowingly concealed that the house had been flooded on numerous occasions. Because of this deception, the Hamiltons alleged they were induced to lease the house. After the house flooded, the Hamiltons alleged they were forced to move from their home and they suffered emotional distress.

Miller, though duly and legally served with citation, failed to appear and answer in the suit. After a hearing on damages, the trial court rendered a default judgment for the Hamiltons, awarding $50,000 as actual damages for lost property and past and future mental anguish, $5,000 in attorney's fees, and $100,000 as additional damages because of Miller's "knowing" conduct.

## 1. Additional damages.

In two points of error, Miller seeks review of the trial court's award of $100,000 in additional damages. Under these points, Miller argues that even though default established the fact of its deceptive conduct, the judgment must be reversed because the Hamiltons did not offer proof regarding the *extent* of its knowledge.

■ To prevail on a writ of error, an appellant must show that the proceeding (1) was brought within six months of the trial court's judgment, (2) by a party who did not participate at trial, and (3) that error is apparent from the face of the record. *Brown v. McLennan County Children's Protective Serv.*, 627 S.W.2d 390, 392 (Tex.1982); *McEwen v. Harrington*, 162 Tex. 125, 345 S.W.2d 706, 710 (1961); *Sunbelt Tectonics, Inc. v. Ramirez*, 742 S.W.2d 771, 772 (Tex.App.—San Antonio 1987, no writ); Tex.R.App.P. 45(b), (d). The Hamiltons do not controvert Miller's allegations that the suit was brought within six months by a party who did not participate in the trial. Thus, the only issue for our consideration under this point is whether there is error apparent from the face of the record. Tex.R.App.P. 74(f).

■ In its first point of error, Miller contends an award of additional damages under the DTPA must be supported by evidence of the *extent* of its knowledge about flooding. Although Miller admits that, by failing to respond to plaintiffs' lawsuit, it may not contest whether its conduct was "knowing," it contends there is no evidence in the record to prove the extent of its knowledge. Thus, Miller argues, the evidence does not warrant the imposition of additional damages. *See Sunrizon Homes, Inc. v. Fuller*, 747

1. Tex.Bus. & Com.Code Ann. § 17.50 (Vernon Supp.  1991).

S.W.2d 530, 534 (Tex.App.—San Antonio 1988, writ denied).

■ To determine the "no evidence" points of error, we consider only the evidence and inferences that tend to support the judgment, and we disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex. 1985); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the judgment, the point must be overruled and the judgment upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ We will sustain a "no evidence" point of error if the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla [2] of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

Under the DTPA, if the plaintiff can demonstrate that the defendant committed certain conduct knowingly, the trier of fact may, in its discretion, award not more than three times the amount of actual damages in excess of $1000. TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1991); *see Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 240–241 (Tex.1985).

■ The amount of additional damages to award after the finding a violation of the DTPA, is within the discretion of the trier of fact; as such, they are unliquidated damages. *Fleming Manufacturing. Co. v. Capitol Brick, Inc.*, 734 S.W.2d 405, 409 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

A default judgment cannot establish the amount of unliquidated damages. *Id.* at 408; *First Nat'l Bank of Irvington v. Shockley*, 663 S.W.2d 685, 689 (Tex.App.—Corpus Christi 1983, no writ). When damages are unliquidated, the plaintiff is required to prove the connection between the liability and the injury, despite the defendant's default. *Morgan v. Compugraphics Corp.*, 675 S.W.2d 729, 731–32 (Tex. 1984); *Kelley v. Southwestern Bell Media, Inc.*, 745 S.W.2d 447, 448 (Tex.App.—Houston [1st Dist.] 1988, no writ); TEX.R.CIV.P. 243. Consequently, even though by default Miller admitted to having knowingly engaged in conduct prohibited by DTPA, the Hamiltons were still required to show the extent of the Miller's knowledge of any flooding warranted imposition of additional damages under § 17.50(b)(1). *Sunrizon*, 747 S.W.2d at 535; *Fleming*, 734 S.W.2d at 409. In other words, although Miller, by its failure to answer, admitted it was aware of its conduct, Miller did not further admit that the extent of its knowledge warranted the automatic imposition of additional damages. *Fleming*, 734 S.W.2d at 409.

■ The sum of the sworn testimony on the question of Miller's knowledge of its conduct is as follows:

Q: Was the listing prepared by Henry S. Miller Company?

A: Yes.

Q: Did [the listing] state that particular house, 19223 Enchanted Stream Drive had water in the house in 1983?

A: That's correct.

. . . .

Q: Did Henry S. Miller Company know that the house had flooded more than having had the water in it the one time they stated?

A: I assume it had.

---

**2.** Legal scholars ponder the question: What is a scintilla? Two scholars, together, recently came up with this definition:

"Scintilla" means literally a trace or a spark. It may be worth noting that Scintilla was the name of a reveller in the debauches described by Petronius in *The Satyricon*. Then again, it may not.

W. Powers & J. Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 521 n. 15 (1991). The Oxford English Dictionary (2d ed. 1989), defines scintilla as Latin for a spark, a minute particle, or an atom.

During plaintiffs' argument to the trial court on the issue of damages, the following discussion took place:

> The Court: Well, isn't it common knowledge in the real estate circles that Enchanted Oaks had flooded for the last 15 years?
>
> Counsel: I would think so.
>
> The Court: I mean not to the consumer but to real estate specialists.
>
> Counsel: Yes and I also think, I think this is not the first transaction that Henry S. Miller has had.
>
> The Court: Well, I'll give you additional damages ma'am, rather than exemplary damages.

The Hamilton's contend this exchange constitutes competent testimonial evidence of Miller's knowledge as to any previous flooding. Miller characterizes the above exchange between counsel and the trial court as "dialogue," not evidence. We agree with Miller. While it is true that counsel was sworn and did testify, her testimony related solely to the issue of attorney's fees. The exchange set out above is clearly argument directed to the court on the issue of the amount of exemplary or additional damages. Such argument of counsel does not constitute evidence. *Sunrizon,* 747 S.W.2d at 533, and we will not consider it as such.

Thus, the only evidence in the record of Miller's knowledge about any flooding other than the 1983 flooding is Mark Hamilton's statement that he "assumed" Miller had such knowledge. Viewing Hamilton's testimony in the light most favorable to plaintiffs, such testimony is so weak that it does not create even a mere surmise or suspicion that Miller knew of additional flooding. There is nothing else in the record that shows (1) the house had flooded on any other occasion after 1983, and if so, (2) Miller had knowledge of any previous flooding.

We conclude that Hamilton's testimony about Miller's knowledge of any other flooding is not even a scintilla of evidence on this vital fact. *Commonwealth Lloyd's Ins. Co.,* 678 S.W.2d at 288. We sustain Miller's first point of error. It is thus unnecessary to address its "insufficient evidence" point of error. *Glover v. Texas Gen. Indemn. Co.,* 619 S.W.2d 400, 401 (Tex.1981).

## 2. The amended petition.

In its first motion for rehearing, Miller asserted, for the first time, the trial court did not obtain *in personam* jurisdiction over it.

The record shows that plaintiffs' original petition, filed in August 1989, requested damages "in an amount in excess of the jurisdictional limits of this Court," and treble damages under § 17.50(b) and (d) of the DTPA, attorney's fees, and court costs. Service of citation of the original petition was accomplished on September 12, 1989. On October 12, 1989, after service, but before moving for default judgment, plaintiffs filed an amended petition. In that petition, plaintiffs requested actual damages in the amount of $60,000, treble damages under § 17.50(b) and (d) of the DTPA, attorneys fees, and court costs.

Plaintiffs presented the motion for default to the trial court on October 26 (the motion is marked filed by the clerk on October 27, 1989). Attached to the motion for default was a certified copy of the officer's return of the original petition, dated September 12, 1989. Nothing in the record indicates that the Hamiltons served the amended petition on Miller. The court conducted a hearing on the motion for default and entered a default judgment on October 26.

We recognize the principle that when a plaintiff amends its petition after moving for default judgment on an earlier petition, the plaintiff must serve the defendant with a new citation and the amended petition. *See Weaver v. Hartford Accident & Indem. Co.,* 570 S.W.2d 367, 370 (Tex.1978). That is particularly true when the damages are increased in the amended petition. *Id.; see also Payne & Keller Co. v. Word,* 732 S.W.2d 38, 42 (Tex.App.— Houston [14th Dist.] 1987, writ ref'd n.r.e.) (new citation is necessary where supplemental petition asks for more onerous

judgment). Here, however, the Hamilton's request for relief contained in their original petition was pled pursuant to the constraints prescribed by rule 47 of the Texas Rules of Civil Procedure. Rule 47 states that, in an original pleading, "in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court" is required. Tex.R.Civ.P. 47(b). Such a pleading is sufficient to support a default judgment. *Capitol Brick, Inc. v. Fleming Manufacturing Co.*, 722 S.W.2d 399, 401 (Tex.1986). The Hamilton's amended petition merely specified the dollar amount of their damages. We cannot say the amended petition requested a more onerous judgment than the original petition, and thus, the Hamiltons were not required to serve Miller with their amended petition before moving for the default judgment. *Cf. Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 617 (Tex.App.—Amarillo 1984, no writ) (amended petition alleging increase in liquidated amount of relief must be served on defendant before a default judgment may be taken).

We overrule Miller's point of error two.

### 3. Conclusion.

Because we sustain Miller's first point of error and hold there is no evidence to support an award of additional damages under the DTPA, we conclude that the question of additional damages must be remanded to the trial court. *Fleming*, 734 S.W.2d at 409–410. On remand, although Miller may not contest whether its conduct was "knowing," it may contest the extent to which its knowledge of any previous flooding warrants an award of additional damages under § 17.50(b)(1).