SHARM, INC., d/b/a Bingo
Gardens, Appellant,

v.

Santos MARTINEZ, Appellee.

No. 13–93–388–CV.

Court of Appeals of Texas,
Corpus Christi.

March 16, 1995.

**780**

Robert L. Guerra, John R. Griffith, Thornton, Summers, Biechlin & Dunham, McAllen, Portia J. Bott, Cooper & Huddleston, Dallas, Reynaldo Ortiz, Ortiz & Garcia, McAllen, Michelle E. Robberson, Cooper & Huddleston, Dallas, Lynn E. Coleman, Thornton, Summers, Biechlin, Dunham & Brown, McAllen, for appellant.

Catherine W. Smith, Edinburg, Ramon Garcia, Edinburg, Eloy Sepulveda, Weslaco, Craig S. Smith, Smith & Edwards, Corpus Christi, for appellee.

Before GILBERTO HINOJOSA,[1] FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION ON MOTION FOR REHEARING

FEDERICO G. HINOJOSA, Jr., Justice.

We issued our original opinion in this case on December 29, 1994. Appellant and appellee have both filed motions for rehearing. We withdraw our original opinion and substitute the following as the opinion of the court.

This is an appeal from a no-answer default judgment. Santos Martinez sued Sharm Inc., d/b/a Bingo Gardens, for premises liability in connection with Martinez's alleged slip and fall on Sharm's business premises. When Sharm failed to timely answer, a hearing was held on damages and a default judgment was entered against Sharm for $2.7 million. Sharm then filed an answer and a sworn motion to set aside the default judgment and for new trial, which the trial court heard and overruled.[2] Sharm appeals by twenty-nine points of error contending that the trial court erred by entering the default judgment and by failing to grant its motion for new trial. We affirm in part and reverse and remand in part.

### FAILURE TO ANSWER LAWSUIT

■ By its tenth through sixteenth points of error, Sharm generally complains that the trial court erred by overruling its motion to set aside the default judgment and for new trial. A motion for new trial is addressed to

---

1. Former Justice Gilberto Hinojosa not participating.

2. We have already addressed in an earlier opinion and will not here revisit our determinations concerning the timeliness of Sharm's motion and perfection of the present appeal. *See Sharm, Inc. v. Martinez*, 885 S.W.2d 165 (Tex.App.—Corpus Christi 1993, no writ) (per curiam opinion on motion to deem date of notice of judgment).

the sound discretion of the trial judge, whose ruling will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984).

■ However, a default judgment should be set aside if the defendant establishes: (1) that its failure to answer was neither intentional nor the result of conscious indifference, but was due to mistake or accident, (2) that it has a meritorious defense, and (3) that its motion for new trial was filed at a time when the granting thereof would occasion no delay or otherwise work an injury to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (Comm'n App.1939, opinion adopted); *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80 (Tex.1992); *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

Martinez filed suit against Sharm on October 19, 1992, and obtained service on Sharm's registered agent on November 2, 1992. When Sharm failed to answer the lawsuit, Martinez moved for and obtained a default judgment against Sharm. Sharm moved to set aside the default judgment and for new trial, alleging the *Craddock* elements. In support of its motion, Sharm filed as exhibits the affidavits of its president, Henry Anawaty, and Mike Charlot, the claims representative of Sharm's insurer, CNA.[3] Martinez opposed the motion and filed the affidavit of her attorney, Eloy Sepulveda, in an attempt to controvert the affidavits of Anawaty and Charlot. In addition, the parties also filed, and the trial court considered, the deposition testimony of, among others, Charlot, Sepulveda, and Lori Avery, the prior CNA claims representative who handled Martinez's claim against Sharm before suit was filed.

■ In order to meet the first element of the *Craddock* test, some excuse, but not necessarily a good excuse, is enough to war-rant setting aside a default judgment, so long as the act or omission causing the defendant's failure to answer was, in fact, accidental. *Craddock*, 133 S.W.2d at 125; *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex.App.—Corpus Christi 1990, writ denied). Where the factual allegations in a movant's affidavits are not controverted, it is sufficient that the motion and affidavit set forth facts which, if true, would negate intentional or consciously indifferent conduct. *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987); *Strackbein*, 671 S.W.2d at 38–39. Moreover, in determining if the defendant's factual assertions are controverted, the court looks to all the evidence in the record, including the opposing party's affidavits and the evidence introduced at the hearing. *Director, State Employees Worker's Compensation Div. v. Evans*, 37 Tex. Sup.Ct.J. 779, 781 (May 11, 1994).

■ In the present case, Anawaty contends that he failed to recognize that Martinez's petition was a separate lawsuit against Sharm until after the default judgment had been taken against Sharm. Anawaty's affidavit states that on October 30, 1992, he was served with an unrelated lawsuit filed by Lucia Mendiola. Later, when Anawaty received the petition in the present Martinez lawsuit, he noticed the word "copy" at the top of the papers and mistakenly assumed them to be a part of the Mendiola lawsuit. Accordingly, he attached the Martinez petition to the back of the Mendiola papers. Anawaty did not hear anything more about the Martinez lawsuit until he was informed that a default judgment had been taken against Sharm.

However, claims representative Avery testified without objection that on November 2, 1992, she received a copy of the Martinez petition, which CNA's local agent had told her Anawaty had faxed to them.[4] In addition, the file activity sheet maintained by CNA on the Martinez claim contains a notation that a copy of the petition was received

---

3. Contrary to Martinez's contention, the affidavits attached to a motion for new trial do not have to be offered into evidence at the hearing thereon in order to be considered by the trial court. *See Director, State Employees Worker's Compensation Div. v. Evans*, 37 Tex.Sup.Ct.J. 779, 780 (May 11, 1994).

4. The Martinez file was then transferred to CNA's litigation unit on November 5, 1992, in accordance with company policy, and Charlot became the claims representative for the present lawsuit.

from Anawaty and that his corporation was aware of the suit. Accordingly, Avery's testimony and the CNA file activity sheet showing that Anawaty sent a copy of the Martinez petition to CNA contradicts Anawaty's statements that he was not aware of the Martinez petition until after the default judgment was taken. The trial court, as fact finder at the hearing on the motion for new trial, was entitled to believe that Anawaty was in fact aware of the Martinez petition at the time he sent a copy of the petition to CNA.

Nevertheless, Sharm also seeks to excuse its failure to answer based on its having entrusted CNA with the duty to answer the lawsuit on its behalf. Sharm alleges that CNA's failure to answer the lawsuit was similarly not intentional or due to conscious indifference, but was based on claims representative Charlot's failure to recognize that the petition had been served and his reliance on the representations of Sepulveda that Martinez would take no further action against Sharm pending settlement negotiations.

 When a defendant's excuse for his failure to answer is his reliance on a third-party agent or attorney to file his answer or to notify him of a trial setting, he must similarly prove that the third party's failure was due to accident or mistake and was not intentional or the result of conscious indifference. *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex.1993); *Jackson*, 802 S.W.2d at 50. In other words, the defendant's entrusting of citation to his agent then clothes the agent with the responsibility to answer the lawsuit on the defendant's behalf under the same guidelines as would be imposed on the defendant's own conduct under *Craddock*. However, before allowing a defendant to rely upon an agent's conduct as an excuse for failing to timely answer, we must first determine that the defendant entrusted his agent with the responsibility for answering the suit. An agent is under no duty to answer a lawsuit until the defendant is actually served and requests the agent to file an answer. *Estate of Pollack v. McMurrey*, 858

S.W.2d 388, 391 (Tex.1993). Accordingly, no duty is imposed on an insurer until its insured is served and sends the suit papers to the insurer. This action by the insured triggers the insurer's obligation to tender a defense and answer the suit. *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 467 (Tex. App.—Dallas 1991, no writ). Sending the "suit papers" to the insurer must logically include the citation indicating service on the defendant and from which the insurer may calculate an answer date. *See* TEX.R.CIV.P. 99.

In the present case, the evidence shows that Anawaty sent a copy of the petition to CNA, but neglected to send a copy of citation.[5] Moreover, Sharm has not alleged and has failed to offer any excuse for Anawaty's oversight in failing to send the citation along with the petition. On the contrary, Anawaty denies having any knowledge of the lawsuit, much less having asked CNA to file an answer on Sharm's behalf. Accordingly, Sharm may not now complain that it relied on CNA to answer a lawsuit that Sharm never asked it to answer.

Because we conclude that the trial court was within its discretion in determining that Sharm failed to meet the first element of the *Craddock* test, we need not discuss the other elements. We hold that the trial court properly denied Sharm's motion to set aside the default judgment and for new trial as to liability. We overrule Sharm's tenth through sixteenth points of error.

### PUNITIVE DAMAGES

 By its first three points of error, Sharm complains that the trial court erred by awarding punitive damages against Sharm because Martinez's original petition, with which Sharm was served, did not request such damages.

The record reveals that Martinez alleged only simple negligence in her original petition. Martinez did not allege gross negligence and did not request punitive damages until she filed her first amended petition.

---

5. Mike Charlot stated in his affidavit that, although CNA had received what he thought was merely a "courtesy copy" of the petition in the present lawsuit in November 1992, he was unaware that citation had been served.

Sharm was not served with Martinez's first amended petition before the default judgment was taken.

■ Generally, when a plaintiff amends its petition after moving for default judgment on an earlier petition, the plaintiff must serve the defendant with a new citation and the amended petition. *See Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex.1978); *Henry S. Miller Co. v. Hamilton*, 813 S.W.2d 631, 635 (Tex.App.—Houston [1st Dist.] 1991, no writ). This is particularly true when the plaintiff, by an amended petition, seeks a more onerous judgment than prayed for in the original pleading. *Weaver*, 570 S.W.2d at 370 (increased actual damages); *Payne & Keller Co. v. Word*, 732 S.W.2d 38, 42 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (prejudgment interest); *Smith v. Amarillo Hosp. Dist.*, 672 S.W.2d 615, 617 (Tex.App.—Amarillo 1984, no writ) (increase in liquidated amount of actual damages); *cf. Henry S. Miller Co.*, 813 S.W.2d at 636 (amended petition did not request more onerous judgment merely by specifying dollar amount of damages which had been generally alleged in first petition).

In the present case, Martinez's allegations of gross negligence and request for punitive damages thereon clearly amounted to a more onerous judgment than was originally requested. We sustain Sharm's first, second and third points of error.

### *UNLIQUIDATED DAMAGES*

By its nineteenth through twenty-ninth points of error, Sharm challenges the legal and factual sufficiency of the evidence presented by Martinez to prove actual damages.

■ A no-answer default judgment operates as an admission of the material facts alleged in the plaintiff's petition, except for unliquidated damages. *Holt Atherton Indus.*, 835 S.W.2d at 83; *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 79 (Tex.App.—Corpus Christi 1992, writ denied). A party who obtains a

default judgment in a personal injury action must present competent evidence of a causal nexus between the event sued upon and the party's alleged injuries. Even if the defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. *Morgan*, 675 S.W.2d at 732. Moreover, our analysis of the legal and factual sufficiency of the evidence to show this causal nexus is the same test used in any challenge to the sufficiency of the evidence. *See Holt Atherton Indus.*, 835 S.W.2d at 84; *Pentes Design*, 840 S.W.2d at 80.

At the default judgment hearing on damages, Martinez testified that, while trying to walk down a ramp at Bingo Grande, she slipped and fell, causing a fracture to her left arm. Martinez was then taken to the hospital and treated for her fracture. Mary Francis Serrota, business manager and custodian of records at the hospital, testified concerning Martinez's medical records. Serrota testified that the hospital's charges for treatment of the arm fracture were "generally in line with other … general practitioners in the area." Martinez testified that the fracture still hurt and that she still had problems with her left arm at the time of the hearing, more than two years after the injury. Martinez testified that she lost some 75 percent of the strength in her left arm and that she covers her left wrist with a leather band because the fracture caused some continuing disfigurement to her arm. Martinez finally testified that certain photographs depicted the way her arm appeared at the time of the injury.[6]

Martinez also testified that she subsequently fractured her left leg in a fall and is now in a wheelchair. Martinez slipped and tried to hold herself up with her left arm as she fell, but because of the weakness in her left arm she was not able to prevent herself from falling and fractured her left leg.

#### *(a) Pain and Suffering*

■ Sharm's nineteenth and twentieth points of error challenge the award of

---

6. We note that, although the hospital bill and the photographs of Martinez's injury are mentioned in the testimony, we have no record of those

exhibits having been admitted into evidence and entered into the record at the time of the default hearing.

$200,000 for physical pain and suffering. Once the existence of some pain and mental anguish has been established, there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact finder. *Pentes Design*, 840 S.W.2d at 80; *see also Daylin, Inc. v. Juarez*, 766 S.W.2d 347, 352 (Tex.App.—El Paso 1989, writ denied). The amounts of damages awarded for pain and suffering are necessarily speculative, and each case must be judged on its own facts. *Pentes Design, Inc.*, 840 S.W.2d at 81; *see also Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 494–95 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Gulf States Utils. Co. v. Dryden*, 735 S.W.2d 263, 268 (Tex. App.—Beaumont 1987, no writ); *Rosenblum v. Bloom*, 492 S.W.2d 321, 325 (Tex.Civ. App.—Waco 1973, writ ref'd n.r.e.).

Martinez testified that she sustained a fractured left arm which required medical treatment at the time of the accident. At the hearing, some two years after the injury, Martinez testified that she continued having pain and weakness in the arm. We hold that there is legally and factually sufficient evidence to support the amount awarded for pain and suffering. Sharm's nineteenth and twentieth points of error are overruled.

### (b) Mental Anguish

Sharm's twenty-first and twenty-second points of error challenge the award of $100,000 for mental anguish. This court has previously allowed separate awards for pain and suffering and mental anguish in *Ford Motor Co. v. Durrill*, 714 S.W.2d 329 (Tex. App.—Corpus Christi 1986), *judgment vacated by agreement*, 754 S.W.2d 646 (Tex.1988), on the ground that, "[w]hile often grouped, we find that these two elements [mental anguish and pain and suffering] are distinguishable and not duplicitous. Mental anguish signifies a state of mind which includes contemplation by the party of the disfigured or maimed condition which he is in as a result of an injury. Physical pain and suffering connotes the physical sensations when injury has occurred to the body." *Id.* at 343.

In the present case, Martinez presented evidence of physical pain and suffering asso-ciated with the broken arm, but she presented no evidence of any mental anguish resulting from the injury. We sustain Sharm's twenty-first and twenty-second points of error.

### (c) Physical Impairment

Sharm's twenty-fourth and twenty-fifth points of error challenge the award of $200,000 for physical impairment. In order to be entitled to recover damages for physical impairment, a plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. *Southern Pac. Transp. Co. v. Harlow*, 729 S.W.2d 946, 950 (Tex.App.— Corpus Christi 1987, writ denied); *Landacre v. Armstrong Bldg. Maintenance Co.*, 725 S.W.2d 323, 324 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Green v. Baldree*, 497 S.W.2d 342, 350 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). Generally, unless her disability is obvious from the injury itself, the injured party must produce some evidence to show the tasks that she can no longer perform because of that injury. *See Harlow*, 729 S.W.2d at 950–51; *Landacre*, 725 S.W.2d at 324.

Martinez testified that the fracture still hurt and that she still had problems with her left arm at the time of the hearing, more than two years after the injury. Martinez testified that she lost some 75 percent of the strength in her left arm. Martinez also testified that she subsequently fractured her left leg in a fall and is now in a wheelchair. Martinez slipped and tried to hold herself up with her left arm as she fell, but because of the weakness in her left arm she was not able to prevent herself from falling and fractured her left leg.

The weakness in Martinez's arm and the fact that her broken leg caused her to be wheelchair-bound would obviously interfere with Martinez's regular activities. We hold that there is legally and factually sufficient evidence to support the amount awarded for

physical impairment. Sharm's twenty-fourth and twenty-fifth points of error are over-ruled.

### (d) Disfigurement

■ Sharm's twenty-sixth and twenty-seventh points of error challenge the award of $50,000 for disfigurement. The term "disfigurement" has been defined as that which impairs the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapened, or imperfect, or deforms in some manner. *Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 160 (1960); *Hopkins County Hosp. Dist. v. Allen*, 760 S.W.2d 341, 343 (Tex.App.—Texarkana 1988, no writ).

■ We find no evidence in the record to show the nature or appearance of the disfigurement that Martinez claims to her left wrist. There is, moreover, no logical inference that a fractured arm would cause disfigurement, absent some additional medical complications. All we have is her conclusory statement that she has been disfigured and her hiding of her left wrist with a leather band. While it is true that the victim's embarrassment and hiding of his disfigured body parts has been a consideration in the assessment of damages for disfigurement,[7] there must be some additional evidence of the nature of the underlying disfigurement in order to support such an award. Without some objective means of examining the appearance of the injury in question, we have no means to determine the extent of disfigurement. The feelings of embarrassment of the victim are insufficient alone to infer that the injury is in fact sufficiently disfiguring to justify an award of damages. Moreover, even if it had been properly admitted into evidence, a photograph of Martinez's arm at the time of the injury would be insufficient to suggest the continuing nature of the disfigurement that she now claims. We sustain Sharm's twenty-sixth and twenty-seventh points of error.

7. *See Allen*, 760 S.W.2d at 343–44.

8. These expenses, as we stated earlier, were not made a part of the record at the time of the

### (e) Medical Expenses

Sharm's twenty-eighth and twenty-ninth points of error challenge the awards of $420 for past medical expenses and $1,500 for future medical expenses.

■ A claim for past medical expenses must be supported by evidence that such expenses were reasonably necessary for the plaintiff to incur as a result of her injuries. *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex.App.—Dallas 1988, no writ); *Carr v. Galvan*, 650 S.W.2d 864, 868 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Orkin Exterminating Co. v. Davis*, 620 S.W.2d 734, 737 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Proof of amounts charged or paid is not proof of reasonableness. *See Dallas Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 382–83 (Tex.1956); *Six Flags Over Tex., Inc. v. Parker*, 759 S.W.2d 758, 760 (Tex.App.—Fort Worth 1988, no writ); *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In addition, evidence that medical expenses are reasonable and customary is no evidence concerning the "reasonable necessity" of those medical expenses and will not alone support an award. *Reeves*, 748 S.W.2d at 305; *Carr*, 650 S.W.2d at 868 (reasonableness of the medical charges amounts to no evidence showing the need for the treatment rendered).

■ Martinez's claim of $420.00 for past medical expenses, and the hospital business manager's testimony concerning the reasonableness of the medical charges in Martinez's record [8], are insufficient to show that the $420.00 claim represented expenses reasonably necessary for the treatment of her injury.

■ Recovery for future medical expenses requires a showing that there is a reasonable probability that such expenses will be incurred in the future. *Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 230 S.W.2d 522 (1950); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 681 (Tex.App.—Texarkana

default hearing and are not available for us to review.

1991, writ denied). An award of future medical expenses is generally within the discretion of the fact finder. *Harvey v. Culpepper,* 801 S.W.2d 596, 599 (Tex.App.—Corpus Christi 1990, no writ). However, such an award may not be based on mere speculation absent evidence to show future medical expenses to a reasonable medical probability. *Harvey,* 801 S.W.2d at 599.

We find no evidence in the record showing a reasonable medical probability that Martinez will require any future medical treatment for her injury. We sustain Sharm's twenty-eighth and twenty-ninth points of error.

Sharm's remaining points of error are not dispositive and we do not address them. *See* Tex.R.App.P. 90(a).

■■■ We DENY appellant's motion for rehearing. We GRANT the first point of appellee's motion for rehearing and DENY the remaining points. We AFFIRM the trial court's default judgment holding Sharm liable for Martinez's injuries. We AFFIRM the trial court's judgment awarding $400,000 to Martinez for pain and suffering and physical impairment. We REVERSE the remainder of the trial court's judgment for actual and exemplary damages and REMAND the case to the trial court for a new trial on the remaining damages claims.[9]

---

9. Having sustained a number of points challenging the legal sufficiency of the evidence to support various claims for actual damages, we would normally reverse and render judgment for Sharm as to those claims. However, when an appellate court sustains a no evidence point after an uncontested hearing on unliquidated damages following a no-answer default judgment, the appropriate disposition is to remand for new trial on the issue of unliquidated damages. *Holt Atherton Indus.,* 835 S.W.2d at 86.