TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00374-CV






Peter Osborne, Appellant



v.



Cooperative Computing, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 96-07580-A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 






 Peter Osborne appeals the default judgment granted against him in favor of Cooperative
Computing, Inc. ("CCI"). He contends that the trial court erred by not allowing his special appearance and
by not setting aside the default judgment. He also contends that the damage awards are not supported
properly by the record. We will affirm the judgment as to liability, reverse the judgment as to the damage
award, and remand the cause to the trial court for another hearing on damages.


BACKGROUND


 In 1992, CCI signed a contract with Bo-Den, Inc. ("the computer contract"). CCI, a
Texas corporation, agreed to install computer equipment and supply software and service in California for
Bo-Den, a California corporation. The contract requires Bo-Den to make payments in Austin, Texas. The
contract states that Texas law governs its construction and performance. Two years later, Bo-Den sold
some assets and liabilities, including the contract with CCI, to Osborne ("the purchase agreement"). 
Osborne was acting on behalf of a company awaiting incorporation--Automotive Distributor for the
Farwest, Inc. d/b/a Farwest Distribution Center. The purchase agreement states that it is governed by
California law and that the forum for hearing requests for equitable remedies or other relief is the superior
court of Orange County. Osborne, owner and chief executive officer of Farwest, executed a guaranty that
Farwest would fulfill its obligations under the purchase agreement; the guaranty states that it is governed
by California law, and that Osborne agrees to submit to the jurisdiction of courts in Orange County,
California. Farwest made payments from September 1994 to July 1995. 

 In 1996, CCI sued Farwest and Osborne in Travis County. CCI initially sued Farwest
for breach of contract for failing to pay CCI after July 1995, then filed an amended petition seeking also
to recover against Osborne on the guaranty. Because Osborne lives in California and is not required to
keep a registered agent for service in Texas, CCI served the citation and copy of the petition on the Texas
Secretary of State. The completed citation was filed in the trial court on November 12, 1996. The
Secretary sent a copy of the citation and petition to Osborne at Farwest's California address. The
Secretary received the return of service on December 19, 1996, signed by what looks like "Sid Schare"
in the "addressee or agent" space. Osborne filed no response. The court rendered default judgment against
Osborne on January 31, 1997. The court severed the claims against him on March 12, 1997, making the
judgment against him final. The court overruled Osborne's motion to set aside the default judgment.

DISCUSSION


A. Personal jurisdiction

 By his fifth point of error, Osborne contends that the trial court erred by denying his special
appearance. The Texas long-arm statute grants trial courts personal jurisdiction over nonresidents doing
business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1986). A nonresident defendant
must negate all bases of personal jurisdiction to prevail in a special appearance. See Kawasaki Steel
Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex.1985). The nonresident must demonstrate that it had
no systematic and continuous contacts with Texas, that it did not purposefully direct any act toward Texas,
and that it took no act within Texas that gave rise to the plaintiffs' cause of action. CSR Ltd. v. Link, 925
S.W.2d 591, 596 (Tex. 1996). The long-arm statute extends personal jurisdiction "as far as the
federal constitutional requirements of due process will allow." Guardian Royal Exch. Assurance, Ltd.
v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.1991). The federal constitution protects
a nonresident defendant's "liberty interest in not being subject to the binding judgments of a forum with
which [it] has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz,
471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319,
(1945)). It prohibits a state court from exercising personal jurisdiction over a nonresident defendant unless
the defendant "'purposefully established "minimum contacts" in the forum state.'" Asahi Metal Indus. Co.
v. Superior Court, 480 U.S. 102, 108-09 (1987) (quoting Burger King, 471 U.S. at 474). Even if the
defendant purposefully established minimum contacts, the state may not exercise personal jurisdiction over
the defendant if such an exercise would offend "'traditional notions of fair play and substantial justice.'" 
International Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); accord
Asahi, 480 U.S. at 113.

 When specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation. Helicopteros Nacionales de Colombia
v. Hall, 466 U.S. 408, 414 (1984). The contact between defendant and forum must have resulted from
the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. 
Helicopteros, 466 U.S. at 417. The litigation must result from alleged injuries that arise from or relate to
those activities. Burger King, 471 U.S. at 472.

 Osborne's contacts with Texas, though minimal, are sufficient to make him amenable to
specific jurisdiction in this suit. Osborne asserts that he does not live in Texas, is not qualified or registered
to do business in Texas, has never engaged in business in Texas, has no Texas employees or telephone,
has not advertised in Texas or attempted to sell products or services in Texas, and does not maintain bank
accounts in Texas. Nevertheless, he personally guarantied Farwest's performance of its obligations in the
purchase agreement with Bo-Den, part of which was the assumption of the computer contract with CCI. 
The failure of the payments to arrive in Texas is the basis of CCI's suit both against Farwest for breach of
the computer contract and against Osborne for failing to make those payments pursuant to his guaranty. 
(Bo-Den assigned its rights against Osborne under the guaranty to CCI.) The trial court did not err by
concluding it could exercise jurisdiction over Osborne in this case. We overrule point five.



B. The Craddock requirements for reversing default judgments

 Osborne asserts by his first point of error that we should reverse the default judgment. He
believes he established in the trial court, as required by case law, that


 the failure of the defendant to answer before judgment was not intentional, or the result of
conscious indifference on his part, but was due to a mistake or an accident; [and that] the
motion for a new trial sets up a meritorious defense and . . . the granting thereof will
occasion no delay or otherwise work an injury to the plaintiff.



Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126 (Tex. 1939). We must reverse if the trial court
abused its discretion by not granting a new trial. Id. The test for abuse of discretion is whether the court
acted arbitrarily, unreasonably, or without reference to any guiding rules and principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 Having service and notice does not bar proof of the first Craddock element. In Craddock
itself, the supreme court found the requisite inadvertence and mistake when an insurance company misfiled
a citation with unimportant papers. 133 S.W.2d at 126. The supreme court also found the requisite
inadvertence and mistake when an insurance company failed to participate because it mistakenly sent a
claim file to the wrong adjustment company. Old Republic Ins. Co. v. Scott, 873 S.W.2d 381, 382 (Tex.
1994). The supreme court held that the uncontroverted evidence of the mistake established the first prong
as a matter of law and reversed the appellate court's affirmance of the default judgment. Id. Another court
found no intentional or conscious indifference by a party who failed to appear at trial because it believed
the trial court would observe the stay order of the county court-at-law and postpone the trial. G & C
Packing Co., Inc. v. Commander, 932 S.W.2d 525, 529 (Tex. App.--Tyler 1995, writ denied).

 Osborne contends that he did not intentionally fail to answer because he never received
notice of the suit. CCI served him pursuant to Texas Civil Practice & Remedies Code Annotated sections
17.044 and 17.045 (West 1997). CCI served the Secretary of State, who forwarded a copy of the
citation and petition to Osborne at the home office address listed in the petition. Someone at that address,
signing in the space reserved for Osborne and his agents, accepted the citation and petition. Osborne
averred that he did not answer the petition because whoever signed the return receipt did not give the
citation or petition to him. He and his attorney both averred that, had Osborne received such notice, he
would have passed it along to his attorney. 

 We conclude that CCI properly served formal citation on Osborne. The acceptance of
the citation and petition at the address alleged in the petition fulfills the statutory requirements. See Mahon
v. Caldwell, Haddad, Skaggs, Inc., 783 S.W.2d 769, 771 (Tex. App.--Fort Worth 1990, no writ); see
also Zuyus v. No'Mis Communications, Inc., 930 S.W.2d 743, 746-47 (Tex. App.--Corpus Christi
1996, no writ). Due process does not require actual notice, but only a method reasonably calculated to
apprise the defendant of the pendency of the lawsuit. Id. at 747. The only evidence in the record indicates
that the required notice arrived at the proper address and was received by Osborne's agent; as CCI notes, 
Osborne does not deny that the notice arrived or that "Schare" was his agent. Further, there is no evidence
regarding what "Schare" did with the notice. 

 Based on the formal citation and Osborne's attorney's actual knowledge of the pending
suit and impending default, we conclude that the trial court did not abuse its discretion. The record shows
that Osborne's attorney, Thomas Jeffers, had actual notice of the lawsuit before the court rendered default
judgment on January 31, 1997. CCI introduced a letter it faxed to Jeffers on January 22, 1997, reminding
him that Osborne had been served, that his answer date had passed, and that it intended to seek a default
judgment if he did not file an answer. It also introduced a letter sent by Jeffers to its attorney confirming
their agreement that CCI would express mail the summons and complaint against Osborne to Jeffers and
that Jeffers would "accept service and file a reply in a few days." Jeffers testified at the hearing on the
motion for new trial that he represented Osborne, agreed to file a response to CCI's petition on his behalf,
and received a copy of the notice and petition from CCI by January 25, 1997. Jeffers testified at the
motion for reconsideration that he intended to file a response to the petition, but thought he was barred by
the automatic stay triggered by codefendant Farwest's bankruptcy filing on January 28. Jeffers testified
that he was mistaken regarding the effect of the stay. He also testified that he had just completed a
probation period from the California state bar for misrepresenting facts to a court, and that he had earlier
been suspended from practicing in the Eastern District of Wisconsin on the basis of a motion under Federal
Rule of Civil Procedure 11. The trial court judges the credibility of the witnesses. The court could have
discounted the testimony regarding the attorney's thoughts regarding the effect of the bankruptcy filing. 
Under the abuse of discretion standard, we do not find arbitrary or unreasonable its conclusion that
Osborne's failure to file did not satisfy the first Craddock requirement. We overrule point one.

C. Damages

 By three points of error, Osborne asserts that the trial court should have set aside the
default judgment because of deficiencies in the record. He complains about the absence of a record of the
damages hearing, the related absence of evidence to support the unliquidated damage award, and the
absence of pleadings to support an exemplary damages award.

 Points of error two and three turn on the impact of the absence of a record of the hearing
on unliquidated damages. The judgment recites that the court held a hearing on unliquidated damages. See
Tex. R. Civ. P. 243 (requiring hearing); see also Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80,
83 (Tex. 1992). There is no transcription of the hearing in the appellate record, however. Absent a record
of the relevant hearing, a reviewing court normally presumes that the evidence before the trial judge
supported the decision. Simon v. York Crane & Rigging Co., Inc., 739 S.W.2d 793, 795 (Tex. 1987)
(appellant's failure to request reporter at hearing on motion for new trial created presumption of sufficient
evidence). An appellate court may order a new trial based on the absence of a record, however, if a
diligent appellant cannot obtain a statement of facts (now, a reporter's record) through no fault of the
appellant. Robinson v. Robinson, 487 S.W.2d 713, 715 (Tex. 1972).

 The diligence inquiry regarding an appellant's attempts to obtain a record of the default-judgment hearing at which unliquidated damages were awarded must focus on appellant's diligence in
seeking a record after the hearing. CCI contends that the same lack of diligence that led to Osborne's
nonparticipation in the trial also caused him to waive his right to complain by not being present to request
a reporter or object to the absence of a reporter. Such an interpretation would undermine Rule 243's
requirement of a hearing. The rule requires substantiation of damage claims; without a record, the appellant
cannot obtain relief because the appellate court cannot review the evidence. Were we to accept CCI's
argument, the party who obtains a default judgment could control and prevent review of the judgment
merely by refusing to record the proceedings. We decline to affirm the default judgment's unliquidated
damage award against appellant in the absence of a record of the evidence or testimony in support thereof.

 We conclude that Osborne has shown the requisite diligence in attempting to obtain the
record. His attorney filed an affidavit stating that, when his co-counsel inquired about a record of the
hearing, court personnel told him that no court reporter recorded the proceeding and that no statement of
facts of the hearing existed. This affidavit and assertion are uncontested. Because Osborne did not cause
the absence of the record, we must reverse the award of unliquidated damages. We sustain points two and
three.

 Osborne also complains that no pleadings support the award of exemplary damages. A
default judgment, like all judgments, must conform to the pleadings. Tex. R. Civ. P. 301; Mullen v.
Roberts, 423 S.W.2d 576, 578 (Tex. 1968); see also Simon v. BancTexas Quorum, N.A., 754 S.W.2d
283, 286 (Tex. App.--Dallas 1988, writ denied) (judgment cannot grant more damages than pleaded.) 
CCI pled breach of contract. Its live petition recounts promises Osborne made and did not keep. Fraud,
however, also requires proof that the speaker made the promise knowing it was false or that the speaker
made it recklessly without knowledge of its truth or falsity. Tilton v. Marshall, 925 S.W.2d 672, 684
(Tex. 1996). We note that CCI's petition, which presumably is subject to amendment upon remand,
contains no request for exemplary damages. Because we must reverse the damage award on other grounds
and remand the cause, however, we need not consider this complaint further.


CONCLUSION


 We conclude that the trial court properly exercised personal jurisdiction over Osborne. 
We therefore affirm the default judgment as to liability. 

 We must, however, reverse the award of damages in the absence of a record supporting
the award. Though we normally cannot remand for a trial solely on damages, that is the proper procedure
when liability is admitted through default. Fleming Mfg. Co., Inc. v. Capitol Brick, Inc., 734 S.W.2d
405, 408 (Tex. App.--Austin 1987, writ ref'd n.r.e.).

 We therefore reverse the award of actual and exemplary damages and remand for a new
trial on damages. We affirm the judgment in all other respects.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Remanded in Part; Affirmed in Part

Filed: November 20, 1997

Do Not Publish



 damage award, and the
absence of pleadings to support an exemplary damages award.

 Points of error two and three turn on the impact of the absence of a record of the hearing
on unliquidated damages. The judgment recites that the court held a hearing on unliquidated damages. See
Tex. R. Civ. P. 243 (requiring hearing); see also Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80,
83 (Tex. 1992). There is no transcription of the hearing in the appellate record, however. Absent a record
of the relevant hearing, a reviewing court normally presumes that the evidence before t