TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00506-CV






Seacoast, Inc.; Michael Wayne Briggs; and Briggs-Cockerham, L.L.C., Appellants



v.



Chuck LaCouture d/b/a Cactus Energy, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 96-03409, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING 







 Seacoast, Inc., Michael Wayne Briggs, and Briggs-Cockerham, L.L.C. appeal a default
judgment rendered in favor of Chuck LaCouture d/b/a Cactus Energy. Appellants collectively complain
that the judgment is not final, that the court should have granted their motion for new trial, that they had no
notice of the damages hearing, and that the evidence was factually and legally insufficient to support the
damage award. Seacoast complains that it had no notice of the suit and Briggs-Cockerham contends that
its notice was defective. We will affirm the finding of default, but reverse the award of damages and
attorney's fees because the evidence is factually insufficient to support the damage award.



FACTS (1)


 Seacoast and Cactus engaged in a joint venture that contracted with Inecel to design,
construct, operate, and maintain two electrical generators in Ecuador beginning in November 1995. 
Seacoast never returned agreements intended to memorialize the Cactus-Seacoast profit-sharing agreement
regarding the venture. Briggs was Seacoast's president and the agent for service of process for both
Briggs-Cockerham and Seacoast. Seacoast was a wholly owned subsidiary of Briggs-Cockerham.

 As constituted, Seacoast allegedly lacked the technical and financial resources to fulfill the
contract, so Seacoast Power purchased all issued and outstanding shares of Seacoast stock in December
1995. Under Seacoast Power's ownership, Seacoast installed the two generators that began producing
electricity respectively in February 1996 and March 1996. After Ecuador failed to make payments,
Seacoast shut the units down in April 1996 and Inecel purported to terminate the contract.

 Meanwhile, Cactus sued appellants in February 1996 for shutting it out of the contract. 
It served Briggs personally and as the registered agent for service for Briggs-Cockerham and Seacoast. 
(Though Briggs was no longer a director, officer, shareholder, or employee of Seacoast, he was still
designated as Seacoast's registered agent for service.) In April, Briggs and Cactus agreed to settle the
case pending the satisfaction of certain conditions. Those conditions were never satisfied, though who is
to blame remains disputed. On May 24, 1996, Cactus received a default judgment and award for damages
and attorney's fees totaling about $27 million against all three appellants.

 Appellants moved for a new trial, asserting the existence of a meritorious defense and the
absence of harm from vacating the judgment. Briggs offered to reimburse Cactus for expenses incurred
in obtaining the default judgment. The court overruled the motion for new trial.


DISCUSSION



Finality

 Appellants contend that we have no jurisdiction because the trial-court judgment is not final. 
They argue that the judgment is interlocutory because it does not dispose of Cactus's claims for
prejudgment interest, punitive damages, and an accounting. Cactus contends that the judgment is final
because it resolves those claims by necessary implication or legal impossibility.

 With limited exceptions, interlocutory judgments are not appealable. Park Place Hospital
v. Estate of Milo, 909 S.W.2d 508, 510 (Tex. 1995). We must determine finality by discerning the trial
court's intent from the language of the decree, the record as a whole, and, sometimes, the parties' conduct. 
Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 277 (Tex. 1996). Though Kiefer dealt with a
summary judgment, courts apply the same finality test to summary and default judgments. Houston Health
Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986). We do not presume that
default judgments are final. Id. In the Houston Health Clubs case, the supreme court determined that the
judgment was not final because it did not address punitive damages when granting all other relief. Id. In
that case, the trial court granted a default judgment against a tenant, giving the landlord possession of the
leased premises, damages for waste, and attorney's fees; the failure of the judgment to address punitive
damages made it interlocutory. Id. (2)

 Here, the contract basis of the award of damages excuses the failure to address punitive
damages. Though the trial court did not specify on which basis it granted judgment, the contract basis is
apparent from the award of attorney's fees. The traditional view is that attorney's fees are recoverable only
pursuant to contract or statutory provision. Dallas Central Appraisal Dist. v. Seven Investments Co.,
835 S.W.2d 75, 77 (Tex. 1992). Neither party asserts that any statutory provision applies. Attorney's
fees are not allowed for tort recovery at common law. New Amsterdam Cas. Co. v. Texas Indus., Inc.,
414 S.W.2d 914, 915 (Tex. 1967). Punitive damages are not a remedy for breach of contract. Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986). Recovery under a contract theory
traditionally excluded a recovery for the same injury under tort theories. See Southwestern Bell Tel. Co.
v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991). Though the supreme court recently held that a party
could recover for fraudulent inducement to contract even if the resulting damages were purely economic
(formerly considered by some courts solely a contractual damage measure), the court did not hold that the
plaintiff could recover on both tort and contract theories for that injury. Formosa Plastics Corp. v.
Presidio Engineers & Contractors, Inc., Tex. Sup. Ct. J. 289 (Jan. 16, 1998). The court did not
address that issue in Formosa because the plaintiff elected tort remedies at trial following a favorable jury
verdict on both tort and contract remedies. Id. at 290. The supreme court also did not address whether
a plaintiff could collect both attorney's fees for breach of contract and punitive damages for fraud in
Schindler v. Austwell Farmers Co-op, 829 S.W.2d 283 (Tex. App.--Corpus Christi 1991), modified
and aff'd, 841 S.W.2d 853 (Tex. 1992). Though the Thirteenth Court of Appeals allowed both awards
of attorney's fees and punitive damages to stand, the supreme court reversed the fraud finding and thus did
not address the propriety of the dual awards. Id. We conclude that an award of attorney's fees signals
election of a contract theory of recovery that by implication excludes tort recoveries, including punitive
damages.

 The imposition of a constructive trust does not change our view that the recovery awarded
was contractual. The constructive trust, while available in a tort case, is an equitable remedy that is also
consistent with a contract recovery. See Wheeler v. Blacklands Prod. Credit Ass'n, 627 S.W.2d 846,
851 (Tex. App.--Fort Worth 1982, no writ). A trust is available in contract cases if it can be placed on
property related to the breach. See id. The trust in this case was placed on the proceeds that Cactus
claims would have been its had the breach not occurred and thus was appropriate for a contract-based
recovery.

 The failure to address the equitable remedy of an accounting does not affect our conclusion
that the judgment is final. Cactus sought an accounting to establish the value of the interests of the parties
that were not ascertainable through standard legal remedies. The judgment, however, makes a specific
award of damages and orders all three defendants to pay Cactus a share of money they receive pursuant
to the contract. The award of damages and the constructive trust rendered the accounting unnecessary.

 The absence of prejudgment interest did not make the judgment interlocutory. Though the
pleading was not specific, equitable prejudgment interest was the only type available on these facts. See
Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex. 1995) (equitable prejudgment
interest). (3) None of the other triggers for prejudgment interest--agreement by the parties, damages on a
liquidated sum, or claims for personal injury, wrongful death, or property damage--exist in this case. See
Tex. Rev. Civ. Stat. Ann. art. 5069-1.03 (West 1987) (parties can agree to rate; otherwise 6% interest
automatically assessed on damages on liquidated sum); Tex. Rev. Civ. Stat. Ann. art. 5069-1.05(6)(a)
(West Supp. 1997) (interest assessed on awards for personal injury, wrongful death, or property damage).
 Equitable prejudgment interest does not begin to accrue until six months after the breach. Cavnar, 696
S.W.2d at 555. The court signed the May 1996 judgment only three months after the February 1996
breach. No equitable prejudgment interest accrued in this case. Because the court did not fail to award
that which did not accrue, the absence of prejudgment interest does not make the judgment interlocutory.

 The award of post-judgment interest supports the conclusion that the judgment is final. The
post-judgment interest runs "from the date of the judgment" rather than from the date of some future
judgment. This award does not give rise to a presumption that the judgment is final, but is entirely consistent
with and bolsters the conclusion that the judgment is final.

 Appellants' filing of an appeal bond and request of a transcript is not a factor in our
decision that the judgment is final. Appellants who are relatively assured that a judgment is not final might,
to be diligent, file an appeal bond to avoid losing their chance to appeal. See Inglish v. Union State Bank,
945 S.W.2d 810, 811 (Tex. 1997) (summary judgment with Mother Hubbard-style language was final
even though underlying motion addressed only some claims, so appeal taken after second summary
judgment was untimely). Treating the filing of a perfecting instrument as an admission that the judgment is
final would make it impossible to challenge the finality of a judgment. We decline to establish a standard
of review that punishes counsel for caution and diligence.

 We conclude that the judgment is final and overrule all contrary points of error.


Service and notice

 Briggs-Cockerham contends that the original service to it was fatally defective. The
remaining appellants join Briggs-Cockerham in complaining that the judgment should be set aside because
they did not receive notice of the trial setting.

 Briggs-Cockerham's service argument turns on one letter. It contends that the use of the
suffix L.L.P. after Briggs-Cockerham in the caption of the citation and the caption and introductory
paragraph of the petition voids the service, motion for default, and default judgment against Briggs-Cockerham, L.L.C. Briggs-Cockerham cites many cases to support its argument that slight inconsistencies
between the name in the citation of service and the name in the default judgment require reversal of the
judgment. Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 884-85 (Tex. 1985)
(default judgment reversed because of discrepancy between petition's allegation that Henry Bunting, Jr.
was registered agent and return of service on Henry Bunting); Hendon v. Pugh, 46 Tex. 211, 212 (1876)
(service of J.N. Hendon does not support default judgment against J.W. Hendon); Faver v. Robinson, 46
Tex. 204, 205 (1876) (service of John R. Favers does not support default judgment against John R.
Faver); Fleming v. Herndon, 564 S.W.2d 157, 158-59 (Tex. Civ. App.--El Paso 1978, writ ref'd n.r.e.)
(citation by publication of Kent Kedder does not support default judgment against Kent Kidder);
Zimmerman v. First Nat. Bank of Bowie, 235 S.W.2d 720 (Tex. Civ. App.--Fort Worth 1950, writ
ref'd n.r.e.) (service of T.W. Zimmerman does not support default judgment against W.T. Zimmerman).

 Here, the fact that the party served was the party in the judgment distinguishes this case
from the cited cases. Though the caption of the citation refers to L.L.P., the citation is directed to L.L.C.
and the return of service reflects that it was served on L.L.C. Though the caption and introductory
paragraph of the petition refer to L.L.P., the recitation of the parties (also on page one) refers to L.L.C. 
The default judgment uniformly refers to L.L.C. We conclude that the service was valid because it was
directed to and served on the proper party against whom the default judgment was rendered. We overrule
the point of error relating to improper service of Briggs-Cockerham.

 Appellants argue that we should impose a duty on plaintiffs to give notice of default-judgment proceedings; they argue that is particularly true where the case involves pro se defendants who
are involved in settlement negotiations. As appellants concede, Texas law does not require that plaintiffs
send notice of a hearing on a motion for default judgment to defendants who receive service but fail to
answer. See Long v. McDermott, 813 S.W.2d 622, 624 (Tex. App.--Houston [1st Dist.] 1991, no
writ); K-Mart Apparel Fashions Corp. v. Ramsey, 695 S.W.2d 243, 246 (Tex. App.--Houston [1st
Dist.] 1985, writ ref'd n.r.e.). They rely on federal court procedures, due-process constitutional provisions,
and the Texas Lawyer's Creed.

 We find no reversible error. The federal procedural argument is unpersuasive because it
arises from a different, inapplicable set of procedural rules. We also find that Cactus complied with
constitutional due process standards regarding notice of the hearing. Constitutional due process requires
that notice be reasonably calculated to apprise interested parties of the pendency of the action and afford
them the chance to present objections. Peralta v. Heights Medical Center, 485 U.S. 80, 84 (1988)
(quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also
University of Texas Medical Sch. at Houston v. Than, 901 S.W.2d 926, 930 (Tex. 1995) (interpreting
state due course of law clause). The trial court in Peralta rendered summary judgment against a bill of
review because the petitioner failed to show a meritorious defense. Peralta, 485 U.S. at 82. The
Supreme Court reversed, not because the defendant did not receive notice of the default hearing, but
because the summary judgment was inappropriate where the defendant alleged he had received no personal
service regarding the lawsuit. Id. at 82. Cactus provided notice to appellants or their registered agent of
the proceeding, but appellants failed to participate. Service of the registered agent is reasonably calculated
to provide notice to the principal. We conclude that a party who has received constitutionally sufficient
notice of the lawsuit and who declines to answer is not constitutionally entitled to a separate notice of a
hearing on the default judgment. See Brooks v. Associates Fin. Servs. Corp., 892 S.W.2d 91, 95 (Tex.
App.--Houston [14th Dist.] 1994, no writ) (nonanswering defendant not entitled to notice of trial and not
deprived of due process when he loses chance to fight default judgment by agreeing to pass hearing on
motion for new trial because of ongoing negotiations). 

 The argument based on the lawyer's creed is likewise unpersuasive procedurally and
substantively. (4) The creed is not generally the basis of a cause of action because it is "primarily aspirational"
and emphasizes voluntary compliance, enforcement by peer pressure and public opinion, and "finally when
necessary by enforcement by the courts through their inherent powers and rules already in existence." 
Order of Adoption, Texas Lawyer's Creed--A Mandate for Professionalism. Further, the record on
appeal does not reveal a clear violation. Though the parties discussed settlement, Cactus contends it also
expressed its intention to aggressively pursue the litigation if settlement failed. Cactus could reasonably
conclude that the appellants' failures to comply with the settlement agreements and to file an answer spoke
louder than any stated intention to pursue settlement or the litigation. While sending notice of the motion
for default judgment is clearly the more courteous practice, we decline to find that the trial court erred
because counsel was not as courteous as possible.

 We overrule all points of error complaining of lack of notice.

The Craddock test

 Appellants contend that the trial court should have granted their motion for new trial
because they met the criteria for such a ruling set down in Craddock v. Sunshine Bus Lines, Inc., 133
S.W.2d 124 (Tex. 1939). These factors require defaulting defendants to (a) demonstrate that their failure
to file an answer or appear was not intentional or the result of conscious indifference, but was a mistake
or accident; (b) set up a meritorious defense; and (c) demonstrate that granting a new trial will not result
in delay or prejudice to the plaintiff. Id. at 126. We review the trial court's decision for an abuse of
discretion. Cliff v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987). When all three elements of the
Craddock test are met, the trial court abuses its discretion by not granting a new trial. Bank One, Texas,
N.A. v. Moody, 830 S.W.2d 81, 85 (Tex. 1992).

 Appellants have not shown that the court abused its discretion by concluding that their
failure to file an answer or appear was not a mistake or accident, but was intentional or the result of
conscious indifference. (5) The Craddock test is met when the failure to file an answer results from the
defendant's reliance upon acts or statements of the plaintiff, or upon an asserted agreement between the
parties. Morris v. Morris, 717 S.W.2d 189, 191 (Tex. App.--Austin 1986, no writ). In Morris, the
parties reached a tentative property settlement. The agreement was never given to the defendant to sign
and was never filed. The trial court awarded default judgment when the defendant failed to file an answer
by appearance day. Id. This Court reversed the default judgment, holding that the defendant's reliance
on the tentative agreement was sufficient excuse for the failure to answer, satisfying the first prong of the
Craddock test. Id. Here, appellants similarly contend that they did not file an answer because Briggs
mistakenly believed that the case would soon settle. This case contains additional evidence not present in
Morris, however. There is testimony in this record that Briggs did not comply with the terms of the
tentative agreement outlined in a letter dated April 30, 1996, which included execution of an arbitration
agreement, exchange of information, and a payment by appellants of $20,000 by May 3, 1996; Briggs
denied promising unconditionally to pay the $20,000. He also testified that he understood that, if he did
not comply, Cactus would pursue the suit. Briggs admitted that he never sent the information to Cactus
or made the payment. Briggs testified that he and Cactus's counsel had a telephone conversation on May
3 which left Briggs believing that the agreement still stood; Cactus's counsel denied the conversation
occurred. The trial court had to choose whom to believe; we conclude that the trial court did not abuse
its discretion by finding that appellants' failure to file an answer was intentional or the result of conscious
indifference rather than mistake. 

 Because appellants failed to sustain the first Craddock factor, we need not consider the
remaining factors.



Sufficiency of the evidence

 A party who defaults on an unliquidated damages claim admits all allegations of fact except
the amount of damages. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). The
defaulted party may challenge the legal and factual sufficiency of the evidence to support the court's
damage award. Id. at 84.

 The standards of review are familiar. In considering a no-evidence or legal sufficiency
point, we consider only the evidence or inferences from the evidence favorable to the decision of the trier
of fact and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965). If more than a scintilla of evidence supports the finding, the no-evidence challenge will fail. 
Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). In considering a factual sufficiency point, we may not substitute our judgment for that of the trier
of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the
conscience, clearly shows bias, or is so against the great weight and preponderance of the evidence as to
be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).

 LaCouture supplied the only testimony regarding damages. (His attorney testified regarding
attorney's fees.) LaCouture testified that the Seacoast-Inecel agreement called for three successive six-month periods with possibility for renewal. It called for the generators to supply 150,000 kilowatts for 24-hour days at a selling price of five cents per kilowatt hour; these figures yield revenues of $90,583,200. (6) 
LaCouture reduced this figure by $29 million in capital expenditures and operating costs of .006 cents per
kilowatt hour; these figures yield total expenses of $39,869,984. The net profits of $50,713,216
discounted to present value at a rate of 6% are $48,382,571. Because Seacoast agreed to give Cactus
40% of the net profits, Cactus's share of these profits is $19,383,026. The 40% contingency fee between
Cactus and its attorney generates a fee of $7,741,211. The trial court made the award accordingly.

 While this is more than a scintilla of evidence of damages, it is too weak to show the
damages with sufficient certainty. Cactus argues that it sought to recover, not lost profits, but "a definite
and certain amount agreed to between the parties." The evidence, however, showed that Seacoast agreed
to pay Cactus 40% of its profits, not a guaranteed amount. Because there would be no payment without
profits, the lost profits guidelines apply. Evidence of lost profits must not be "uncertain or speculative" but
can be based on "'data from which lost profits may be ascertained with a reasonable degree of certainty
and exactness.'" Texas Instruments, Inc. v. Teletron Energy Management, Inc., 877 S.W.2d 276, 279
(Tex. 1994) (quoting Southwest Battery Corp. v. Owen, 114 S.W.2d 1097, 1098-99 (Tex. 1938)); see
also Fleming Mfg. Co. v. Capitol Brick, Inc., 734 S.W.2d 405, 408 (Tex. App.--Austin 1987, writ
ref'd n.r.e.) (in suit by brickmaker against seller of defective brick mold, proof of bargained-for brick
mold's production capacity and prevailing brick prices did not prove lost profits absent proof of market
for bricks). The evidence in the record shows what the parties planned or assumed the contract would
generate, but does not show the reasonableness of the plans or assumptions that there would be profits. 
Further, the record does not contain any evidence of what profits accrued while Seacoast operated the
generators before the default judgment; such figures would also help indicate the reasonableness of the
assumptions. The testimony in the record allows for exact calculation of profits, but there is no hard
evidence establishing any degree of certainty of those profits. We find the evidence factually insufficient to
support the damage award in the judgment.

 Because the attorney's fee award was merely a percentage of the damage award, our
holding that the evidence was factually insufficiency to support the damage award necessitates a reversal
of the attorney's fee award. We note that the evidence supporting the attorney's fee award consisted
almost entirely of LaCouture and his attorney testifying that they agreed on a 40% contingency fee which
the attorney considered reasonable. We also note that this Court has applied in a non-DTPA case the
supreme court's holding in a DTPA case that attorney's fees awards must be expressed in actual dollars
rather than as a percentage of recovery. Lubbock County v. Strube, No. 03-96-00510-CV, slip op. at
17-19, 1997 WL 592486 at *11 (Tex. App.--Austin Sept. 25, 1997, pet. conditionally filed) (applying
Arthur Andersen & Co. v. Perry Equipment Co., 945 S.W.2d 812, 819 (Tex. 1997) in a
Whistleblower-Act case). Though the award in this case was expressed in actual dollars, the proof fell
short of the guidelines for demonstrating the reasonableness of attorney's fees. See Strube, slip op. at 18,
1997 WL 592486 at *11 (quoting Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)).

 We overrule the points of error with regard to the legal sufficiency of the evidence and
sustain the points of error with regard to the factual sufficiency of the evidence.


CONCLUSION


 We affirm the finding of default. We reverse the award of damages. Because the
attorney's fee award was contingent on the damage award, we also reverse that award. Though we
normally cannot remand for a trial solely on damages, that is the proper procedure when liability is admitted
through default. Fleming Mfg., 734 S.W.2d at 408. We remand the case for further proceedings on
damages and attorney's fees.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed in Part; Reversed and Remanded in Part

Filed: January 29, 1998

Do Not Publish
1. The following fact summary is taken largely from the petition. Some details about the underlying
transactions come from Seacoast's brief. We may accept the statements in the brief as true if the other
parties do not dispute them. Tex. R. App. P. 38.1(f). The descriptions of the transactions give context to
our discussion, but do not affect our disposition of the appeal.
2. We note that in all the cases relied upon by the appellant the trial court was attempting to change or
modify the judgment in question and therefore the trial court was attempting to treat the judgment as
interlocutory. Here, the contrary is true.
3. The supreme court recently substantially modified the methods of computing equitable prejudgment
interest set out in Cavnar. See Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 41 Tex.
Sup. Ct. J. 201, 217 (Dec. 11, 1997). This modification does not affect our analysis, however, because
we are analyzing the meaning of the court's failure to award prejudgment interest rather than the
correctness of that failure. We analyze the meaning of the court's actions in the context of the law
applicable at the time of the judgment. Subsequent changes in the law do not alter how the trial court
understood the law at the time of judgment.
4. The cited section states "I will not take advantage, by causing any default or dismissal to be rendered
when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to
proceed." Texas Lawyer's Creed--A Mandate for Professionalism, § III, para. 11 (1989). 
5. Seacoast separately contends that it never received notice of the suit, judgment, or the hearing on the
motion for new trial because Briggs, its registered agent for service of process, never passed the citation
along to anyone at Seacoast. Seacoast contends that no one else connected with it knew anything about
the lawsuit. No evidence to this effect was in the appellate record from the trial court (ostensibly because
Seacoast did not know of the suit). Because it was not in the record, we cannot consider it for the first time
on appeal. Seacoast and Cactus assert that Seacoast has made this argument part of a bill of review at the
trial court. Seacoast joins the other appellants in urging the arguments made in the trial court.
6. Though LaCouture testified that the contract assumed 92% utilization of the capacity, it is not clear
that he included this reduction in his calculation.



contingency fee which
the attorney considered reasonable. We also note that this Court has applied in a non-DTPA case the
supreme court's holding in a DTPA case that attorney's fees awards must be expressed in actual dollars
rather than as a percentage of recovery. Lubbock County v. Strube, No. 03-96-00510-CV, slip op. at
17-19, 1997 WL 592486 at *11 (Tex. App.--Austin Sept. 25, 1997, pet. conditionally filed) (applying
Arthur Andersen & Co. v. Perry Equipment Co., 945 S.W.2d 812, 819 (Tex. 1997) in a
Whistleblower-Act case). Though the award in this case was expressed in actual dollars, the proof fell
short of the guidelines for demonstrating the reasonableness of attorney's fees. See Strube, slip op. at 18,
1997 WL 592486 at *11 (quoting Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)).

 We overrule the points of error with regard to the legal sufficiency of the evidence and
sustain the points of error with regard to the factual sufficiency of the evidence.