# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00641-CV

**Dwayne Patlyek, Appellant**

**v.**

**Luther Brittian, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 6802-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING

## O P I N I O N

This is a personal injury case whose appellate issues center on a jury submission regarding past physical impairment. A jury returned a verdict in favor of Dwayne Patlyek for $15,683.25 against Luther Brittian for personal injuries sustained in a motor vehicle accident, including a finding of $6,000 for past physical impairment. The trial court granted a motion to disregard the physical impairment finding, concluding there was no evidence to support it. Patlyek appeals this ruling. Brittian brings a cross-point urging that the trial court erred in submitting past physical impairment because there was no evidence of it and because Patlyek requested the submission orally, not in writing, after the charge conference concluded. We reverse the trial court's judgment, reinstate the jury's verdict, and remand for recalculation of interest.

## BACKGROUND

This case arises from an automobile accident during the morning of April 11, 2001. As Patlyek was turning right at a stop light, a truck driven by Brittian hit him from behind, knocking Patlyek's vehicle out of the intersection, off the road, and up over a large pile of dirt beside the road. Patlyek compared the experience to an unexpected bull ride. He remembered feeling a tingling sensation in his hand and fingers, but assumed this to be merely a temporary response to the jolt he suffered. He refused medical treatment at the scene.

Patlyek testified that he began experiencing stiffness as evening approached on the day of the accident. On the following day, he went to see a chiropractor, complaining of burning in the back of his neck and left side and sharp pain in his shoulder and elbow. He experienced pain when lifting, coughing, sitting, turning his head, or lying down. The chiropractor treated him with adjustments, massages, and exercises. He continued to see the chiropractor for about a month and a half.

Patlyek's pain and discomfort also caused him to lose sleep. He experienced sleepless nights on a weekly basis in May and June. Patlyek also recounted that he experienced a lack of mobility in his neck that prevented him from turning his head to the left quickly or completely. He also complained of weakness, tingling, and pain in his shoulder, arm, and neck that impeded his ability to work. Patlyek runs a one-person subcontracting business in which he installs utility lines and septic systems. The work is labor-intensive and involves excavation; much of his work is done with a jackhammer and rock saw. Patlyek testified that he enjoyed the physical nature of the work. However, in the immediate aftermath of the accident, Patlyek tried to work half days

2

but "just couldn't do it" and was taken off work by the chiropractor for a few days. He then attempted to ease back into his work but found it necessary to hire additional help to keep up with business demands, as well as rent heavy equipment so the new help could handle the work Patlyek had previously accomplished alone.

Patlyek testified that he gradually "started feeling better and better" over the summer and early fall to the point that, when he visited a doctor for treatment of poison ivy in early October, he did not complain of any symptoms. He indicated his pain had largely subsided, he had only one or two sleepless nights during September or October, and he had begun to take on more work, including trading off jackhammer work with his employee. However, "going into full swing" in his work later that month, Patlyek felt his earlier symptoms return and "the whole thing started over again." He went to see his family doctor who prescribed physical therapy. Patlyek testified that his symptoms were gone by December 2003, except that "I couldn't turn my head to the left quickly or completely even past December several months."

At the charge conference, Patlyek sought submission of past medical expenses, past physical pain and mental anguish, past lost wages or earning capacity, and the cost of equipment rental as elements of damages. He did not seek any future damages. While submitting medical expenses, physical pain and mental anguish, the court refused to submit lost wages or earning capacity or equipment rental costs. It concluded that Patlyek could not recover equipment rental as an element of damages, and that lost earning capacity had not been properly pleaded. Moreover, although Patlyek had introduced evidence of invoices for equipment rental and wages paid to his employees, he had not quantified any lost wages. Before the charge was read to the jury, Patlyek

3

orally requested the submission of past physical impairment as an element of damages. The trial court granted the request over Brittian's objection that no evidence supported the submission of physical impairment.

The jury found Brittian 100 percent liable for the accident and awarded Patlyek $1,904 for past medical expenses, $3,000 for past pain and mental anguish, and $6,000 for past physical impairment. The court rendered judgment on the jury's verdict on July 21, 2003. Brittian filed a motion for new trial and to disregard the jury finding on past physical impairment. Brittian argued that no evidence supported the submission of past physical impairment and that Patlyek waived the issue by failing to request it at the charge conference. On September 22, the court granted the motion to disregard and signed a second judgment omitting the $6,000 for past physical impairment. This appeal ensued.

Patlyek argues that legally sufficient evidence supports the submission of physical impairment to the jury. Brittian brings a cross-point urging that the trial court erred in submitting past physical impairment because there was no evidence of it and because Patlyek requested the submission orally after the charge conference had concluded.

**DISCUSSION**

**Evidence of past physical impairment**

Standard of review

Patlyek contends that the trial court erred in disregarding the jury's award of physical impairment damages, and Brittian contends by cross-point that no evidence supported the submission of that issue. As to both issues, we apply the "no evidence" or legal sufficiency standard of review.

4

There is "no evidence" or legally insufficient evidence when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); Robert W. Calvert, "*No Evidence*" *and* "*Insufficient Evidence*" *Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Havner*, 953 S.W.2d at 711 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 183 (Tex. 1995).[1]

---

[1] Our starting point for determining the legal sufficiency of evidence supporting a jury finding is generally the charge and instructions actually submitted to the jury. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *cf. Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003) ("Before a court can properly conduct a factual sufficiency review, it must first have a clear understanding of the evidence that is pertinent to its inquiry. The starting point generally is the charge and instructions to the jury."). In this case, "physical impairment" was not defined in the charge, nor was the jury instructed to avoid duplicative awards of multiple categories of damages for the same losses. Brittian did not request these instructions, nor has he complained of their omission. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003) (applying legally correct definition of joint enterprise, in lieu of definition submitted by trial court, where defendant objected to trial court's definition). In *Jackson*, the supreme court seems to suggest that the submission of physical impairment without proper accompanying instructions might expand the scope of evidence we consider in our sufficiency review. *Jackson*, 116 S.W.3d at 773-75 (struggling with factual sufficiency review where charge left open possibility that jury might have awarded physical impairment damages under other damage elements and suggesting that, absent proper instruction, evidence bearing on other damage categories could support physical impairment award). We need not explore any possible implications of the charge form for our no evidence review because Brittian,

5

Past physical impairment

"Physical impairment" encompasses the loss of the injured party's former lifestyle. *Ramirez v. Fifth Club, Inc.*, No. 03-03-00241-CV, 2004 Tex. App. LEXIS 3751, at \*44 (Tex. App.—Austin Apr. 29, 2004, no pet. h.); *Dawson v. Briggs*, 107 S.W.3d 739, 752 (Tex. App.—Fort Worth 2003, no pet.). It can encompass both economic and non-economic losses, and can include hedonic damages, or "loss of enjoyment of life." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 764-65, 772 (Tex. 2003); *see also Ramirez*, 2004 Tex. App. LEXIS 3751, at \*44 (noting that physical impairment is "sometimes called loss of enjoyment of life"). To prevent the risk of double recovery, Texas courts have long struggled to limit recovery of physical impairment damages solely to losses other than those being compensated through other damage elements. Thus, this Court, like many of our sister courts of appeals, has required a plaintiff to "prove that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering and mental anguish to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated." *Ramirez*, 2004 Tex. App. LEXIS 3751, at \*44; *see also Jackson*, 116 S.W.3d at 765 (citing examples). In *Jackson*, the Texas Supreme Court recently approved a more specific and restrictive version of this standard when providing a model jury instruction for use in submitting physical impairment: "the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity." 116 S.W.3d at 772. We apply the supreme court's articulation of the standard as an authoritative statement of the substantive law underlying our "no evidence" inquiry.

---

through his cross-point, also preserved error regarding the legal sufficiency of the evidence supporting the trial court's submission of physical impairment.

6

Thus, to recover damages for physical impairment, Patlyek must have adduced more than a scintilla of evidence that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damage elements;[2] and (2) these distinct injuries have had a "substantial" effect.

Patlyek asserts that the following comprise evidence of past physical impairment:

- ! Patlyek's pain caused him to visit a chiropractor on the day after the accident. At the time, he was experiencing pain when lifting, coughing, sitting, turning his head, or lying down.

- ! Due to his pain, Patlyek experienced problems sleeping. He experienced sleepless nights on a weekly basis in May and June. This problem gradually dissipated until Patlyek reaggravated his injuries in October.

- ! For approximately six to eight months after the accident, Patlyek experienced weakness, tingling, and pain in his shoulder and arm that prevented him from fully performing his job the way he could prior to the accident. Patlyek had to take off work for a few days after the accident, and had to limit his activities to varying degrees until he fully recovered. Patlyek sought both economic damages for these losses (the labor and equipment expenses he incurred while trying to keep up his business operations) and non-economic damages (the loss of the ability to participate in an activity he found enjoyable; Patlyek testified that he enjoyed the physical nature of his job).

- ! Apart from the pain he was experiencing, and even after it had subsided, Patlyek testified that he experienced restricted mobility in his neck that prevented him from turning his head left completely or quickly. This limitation continued "even past December several months." Patlyek coped with the problem at times by "constantly" and daily trying to stretch his neck so his head could turn "all of the way over there."

---

[2] To this extent, we agree with Brittian that we must consider only losses unique to physical impairment.

7

Patlyek does not seek damages for any future physical impairment,[3] nor does he claim that his injuries are permanent in nature. Although Texas intermediate appellate courts have been inconsistent on the subject, the supreme court in *Jackson* appeared to acknowledge that temporary injuries could give rise to physical impairment. *Id.* at 765-66.

We first consider whether the losses Patlyek cites are distinct from losses compensable under other damage categories. Attempts by appellate courts to classify losses as within physical impairment or other damage categories present the risk that the reviewing court will inappropriately substitute its judgment for that of the jury in evaluating in which category, if any, plaintiffs should be compensated. *See id.* at 773. This Court, like many of our sister courts, has tended to avoid such intrusions by focusing on whether the injuries have impeded a plaintiff's ability to engage in specific non-work related activities, such as sports, hobbies, or recreational activities. *Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 38 (Tex. App.—Tyler 2003, pet. denied) ("[p]hysical impairment encompasses the inability to participate in sports, hobbies or other recreational activities"); *see also Jackson*, 116 S.W.3d at 773 (implying that plaintiff's inability to enjoy recreational activities during recuperation from injuries might be compensable as past physical impairment). By focusing on actual impediments to the plaintiffs' activities, a reviewing court can distinguish losses comprising physical impairment from the pain, suffering, inconvenience, or

---

[3] Patlyek suggests that Brittian "viewed all Plaintiff's testimony as representative of a past physical impairment claim," suggesting some form of concession on the part of Brittian. We do not view the record as supporting this proposition. In the portion of the record that Patlyek cites for this proposition, Brittian's counsel is cross-examining Patlyek to clarify that Patlyek is not seeking any future medical expenses, future impairment, future loss of earnings, or other future damages. We do not view this questioning as tantamount to an admission that Patlyek was entitled to past physical impairment or any other past damages.

distress compensable in and of themselves through pain and suffering or mental anguish damages. By focusing on activities unrelated to work, a reviewing court can distinguish losses comprising physical impairment from those comprising lost wages or earning capacity.

To make these determinations, Texas courts have looked to whether (1) impediments to the plaintiff's non-work related activities are obvious from the injury itself; or (2) the plaintiff produces some evidence of specific non-work related tasks or activities he can no longer perform. *Reynolds*, 127 S.W.3d at 38-39; *Sharm, Inc. v. Martinez*, 900 S.W.2d 777, 784-85 (Tex. App.—Corpus Christi 1995, no writ). Examples of injuries or limitations that have been held to be legally sufficient evidence of physical impairment include difficulty eating and communicating with others, *Ramirez*, 2004 Tex. App. LEXIS 3751, at *44; continuing inability to sleep due to sharp pains, plus inability to run, bicycle, participate in triathlons, and play with children, *Reynolds*, 127 S.W.3d at 38-39; past inability to walk and future difficulties in running, standing, and climbing, *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 412-13 (Tex. App.—Houston [14th Dist.] 2001, pet. abated); inability to ascend or descend stairs or kneel and difficulty in standing for long periods of time, *Missouri Pac. R. Co. v. Robertson*, 25 S.W.3d 251, 259 (Tex. App.—Beaumont 2000, no pet.); loss of seventy-five percent of strength in left arm, which subsequently contributed to plaintiff's falling, breaking her leg, and being confined to a wheelchair, *Martinez*, 900 S.W.2d at 784; and difficulties performing yard work, car maintenance, and playing racquetball. *Southern Pac. Transp. Co. v. Harlow*, 729 S.W.2d 946, 950-51 (Tex. App.—Corpus Christi 1987), *writ denied sub. nom.*, *Port Terminal R.R. Ass'n v. Harlow*, 745 S.W.2d 320 (Tex. 1988).

Applying these standards, most of the losses Patlyek cites as evidence of physical impairment appear indistinguishable from pain and suffering, mental anguish, or lost earnings damages.[4] But, under our standard of review, we believe that evidence regarding Patlyek's inability to turn his head to the left constitutes some evidence of physical impairment. Viewing the evidence in the light most favorable to Patlyek, as we must, he was unable to turn his head to the left completely or quickly until several months after December, when he had otherwise fully recovered from his injuries. This limitation on his mobility, moreover, was independent of the pain and weakness Patlyek experienced. Being unable to rotate one's head completely or normally would have an obvious impact on day-to-day activities, such as driving a car, responding to one's name

---

[4] Patlyek's pain and inability to sleep related to his injury appear to be compensable only as pain and suffering, and not as physical impairment. In *Harris County v. Smith*, the supreme court affirmed our sister court's finding that no evidence supported the submission of physical impairment with regard to a plaintiff who claimed (1) she experienced pain in her abdominal area following an accident; (2) this pain, as well as back pain, caused her sleep problems; but (3) these problems ceased after about seven months. 66 S.W.3d 326, 331(Tex. App.—Houston [1st Dist.] 2001), *rev'd on other grounds*, 96 S.W.3d 230, 232 (Tex. 2002) (objection that damage elements had no support in the evidence "was also correct").

As for Patlyek's weakness and tingling in his shoulder and arm, he does not suggest how these injuries would impede his non-work activities. In contrast to plaintiffs who are unable to walk, *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 412-13 (Tex. App.—Houston [14th Dist.] 2001, pet. abated), who have lost virtually all strength in one arm, *Sharm, Inc. v. Martinez*, 900 S.W.2d 777, 784 (Tex. App.—Corpus Christi 1995, no writ), or who cannot eat or communicate with others, *Ramirez v. Fifth Club, Inc.*, No. 03-03-00241-CV, 2004 Tex. App. LEXIS 3751, at *44 (Tex. App.—Austin Apr. 29, 2004, no pet. h.), Patlyek's complaints regarding his shoulder and arm were confined to problems he experienced in response to strenuous work on a jackhammer or in laying heavy pipe. Moreover, losses related to Patlyek's inability to work are compensable, if at all, as lost wages or lost earning capacity, and might have been recovered had Patlyek pleaded them properly. Patlyek attempts to mask these deficiencies by characterizing his job as, in effect, a recreational activity on the basis that he enjoys its physical nature. We are unaware of any authority supporting the view that a lost earnings claim can be converted into a physical impairment claim merely because a plaintiff testifies he or she likes a job, and we doubt Patlyek could do so here.

10

when called, or any recreational activity involving movement of one's head. It is thus similar to impediments of such elemental activities as walking, eating, kneeling or standing that have been held to constitute physical impairment. *See Smith*, 66 S.W.3d at 331-32 (permanent inability to bend or twist at the waist, along with inability to sit for prolonged periods or to lift more than twenty pounds, was legally sufficient evidence of physical impairment).

We also believe that this evidence satisfies the second requirement for recovering physical impairment damages, that the distinct loss be "substantial." Patlyek testified that his inability to rotate his head lingered for several months *after* the eight months in which he otherwise recovered from the accident. While Patlyek's injuries are perhaps not as dramatic as those involved in the cases discussed above, awards for physical impairment have been held not to always require egregious injuries, and Texas courts have awarded such damages based on injuries less severe than Patlyek's. *See Robinson v. Minick*, 755 S.W.2d 890, 894 (Tex. App.—Houston [1st Dist.] 1988, writ dism'd). Absent more specific guidance from the Texas Supreme Court regarding the meaning of the requirement that physical impairment damages be "substantial," we are reluctant to take the determination of physical impairment damages from the jury on that basis alone.

We accordingly hold that legally sufficient evidence supported the jury's award of physical impairment damages, sustain Patlyek's issue, and overrule Brittian's cross-point to the extent it urges an evidentiary complaint.[5]

---

[5] Brittian did not assert on appeal a challenge to the factual sufficiency of the jury's $6,000 award for past physical impairment.

11

**Cross-point**

   Standard of review

          In his cross-point, Brittian complains of the trial court's submission of the past

physical impairment element to the jury.  We review alleged error in a jury charge under an abuse

of discretion standard.  *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990);

*Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 350 (Tex. App.—Austin 2002, pet. denied).  To obtain

a reversal, an appellant must establish that the trial court acted arbitrarily, unreasonably, or without

reference to the guiding legal rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701

S.W.2d 238, 241-42 (Tex. 1985); *Ganesan*, 96 S.W.3d at 350.  Even if error exists, the appellant

must show that considering the totality of the circumstances the error amounted to such a denial of

rights as was reasonably calculated to cause and probably did cause the rendition of an improper

judgment.  Tex. R. App. P. 44.1(a)(1); *Ganesan*, 96 S.W.3d at 350.

   Submission of physical impairment

          Brittian's cross-point complains of charge error on the grounds that: (1) there was no

evidence to authorize the submission, and (2) Patlyek violated Texas Rule of Civil Procedure 273

in not submitting the requested element of damage in writing during the charge conference.  We have

already held that there was some evidence to support the submission of this element of damage, so

we need address only Brittian's second argument.

          The charge conference was conducted during several breaks in the trial proceedings

when the jury was outside the courtroom.  As is common with broad-form submissions, both sides

had previously filed full jury charges instead of individual questions and instructions.  An informal

12

charge conference began on July 8, and because Brittian's attorney had a more comprehensive proposed charge on a computer diskette, his was used as the court's working copy. Both parties suggested and argued additions and objections to that charge on July 8. The court consulted the *Texas Pattern Jury Charges* and requested that the parties finish reviewing the proposed charge and do legal research on several points overnight. The next day, the parties and the judge continued the discussion of the charge and case law. The court ruled in Brittian's favor on most issues, including denying Patlyek's request for damage elements for lost earning capacity, equipment rental, and wages for his employees. As the discussion ended, Patlyek's lawyer noticed that the damages question did not contain a blank for past physical impairment as a component of the damages question. He orally requested that the court add that element of damage to the charge and the court granted the request.[6] Brittian vigorously objected on the basis that: (1) the charge conference was completed the previous day so the request was untimely; (2) the past physical impairment request was an attempt to obtain the same damages that had been denied in connection with lost earning capacity issue; and (3) there was no evidence to support the submission.

---

[6] The following is how the issue arose:

> [Patlyek's Attorney]: Physical impairment was not found. It was in my original proposed charge to the Court. It just was left out of the more expansive proposed charge of [Brittian]. I did not catch that until a minute ago in reading the final one. There is no impairment blank or element of damage to recover for, although it was pled for and there was evidence of it. I would simply ask at this time that that [sic] request be heard by the Court.
>
> The Court: I'll hear your request. Would that go under question three?
>
> [Patlyek's Attorney]: It does. It would be a – it would be a C, and it's physical impairment in the past.

13

The record clearly demonstrates that the charge conference continued over to, or was resumed on, July 9. Patlyek made his oral request at the end of the court's discussion of the charge with the lawyers and before the charge was read to the jury. *See* Tex. R. Civ. P. 272. This request was timely.

We note that the record reflects that Patlyek complied with Texas Rule of Civil Procedure 273 because he apparently submitted the element of past physical impairment to the court in writing in his proposed jury charge. Patlyek's lawyer timely pointed out to the court that Brittian's lawyer's version failed to contain the requested element. Moreover, the cases cited by Brittian involved situations where the court refused to submit an orally-requested question, instruction, or definition and the complaint on appeal was about the *refusal* to submit. *See, e.g.*, *Woods v. Crane Carrier Co.*, 693 S.W.2d 377, 379 (Tex. 1985); *Gulf Oil Corp. v. Williams*, 642 S.W.2d 270, 273 (Tex. App.—Texarkana 1982, no writ). Here, the court submitted the missing element of damage, so the issue of preserving the orally-requested element itself is not a concern.

With regard to Brittian's complaint that the submission was not in writing, we note that Brittian did not make that complaint to the trial court. "To preserve error, parties must make all objections to the jury charge before the charge is read to the jury; all objections not so presented are waived." *Summit Mach. Tool Mfg. Corp. v. Great N. Ins. Co.*, 997 S.W.2d 840, 849 (Tex. App.—Austin 1999, no pet.). The objecting party must point out distinctly the objectionable matter and the basis for the objection. *Id.*; Tex. R. Civ. P. 274. A party must make the court aware of the complaint, timely and plainly and obtain a ruling, otherwise the objection is waived. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *Summit Mach. Tool Mfg.*

14

*Corp.*, 997 S.W.2d at 849.  Brittian's objection at trial does not comport to the objection he lodges on appeal, so his issue on appeal is waived.

## CONCLUSION

We reverse the judgment of the county court at law disregarding the jury's verdict awarding past physical impairment damages, overrule Brittian's cross-point, and render judgment on the verdict that Patlyek receive $6,000 in past physical impairment damages.  We remand for recalculation of interest.

_____

Bob Pemberton, Justice

Before: Justices Kidd, B. A. Smith and Pemberton

Reversed and Remanded

Filed:   June 10, 2004