MEMORANDUM OPINION

No. 04-05-00514-CV

Dr. Gerald L. FROEMMING, Individually, 

Gerald L. Froemming, D.D.S., Inc. and 

Gerald L. Froemming, D.D.S., P.A. ,

Appellants

v.

Lucy PEREZ and Melinda Jimenez-Perez ,

Appellees

From the 408th Judicial District Court, Bexar County, Texas

Trial Court No. 2004-CI-18856

Honorable Rebecca Simmons , Judge Presiding

Opinion by: Catherine Stone , Justice


Sitting: Catherine Stone , Justice

 Karen Angelini , Justice

 Sandee Bryan Marion , Justice

Delivered and Filed: March 22, 2006

REVERSED AND RENDERED IN PART; AFFIRMED AS MODIFIED IN PART

 This is a restricted appeal of a no-answer default judgment rendered against appellant, Dr. Gerald L. Froemming. (1) 
Appellees, Lucy Perez and Melinda Jimenez-Perez (collectively referred to as "Perez") sued for deceptive trade practices,
breach of contract, and infliction of emotional distress. The judgment awarded $7,000 in economic damages and $21,000
for mental anguish damages to Perez under the Texas Deceptive Trade Practices Act (DTPA). The trial court trebled
Perez's economic and mental anguish damages due to Froemming's intentional conduct; Perez was also awarded $7,000 for
breach of contract and $5,000 for attorney's fees. In seven issues, Froemming asserts that: (1) the trial court erred in
awarding judgment under the DTPA; (2) the evidence was legally insufficient to find that Perez suffered $7,000 in
economic damages under the DTPA; (3) the evidence was legally insufficient to find that Perez was entitled to $21,000 for
mental anguish damages under the DTPA; (4) the evidence was legally insufficient to find that Froemming's conduct was
committed intentionally; (5) the trial court erred in awarding $7,000 for both breach of contract and DTPA violations; (6)
the trial court erred in awarding a joint judgment; and (7) there was no evidence to support an award of $5,000 in attorney's
fees. We reverse and render the trial court's judgment in part, and affirm the trial court's judgment as modified in part. 

 Background

 On August 10, 2001, Perez entered into a contract with Froemming for the benefit of her daughter, Melinda Jimenez-Perez,
for orthodontic services. The cash price for services was listed as $3,919; however, special payment arrangements were
made in the contract wherein Perez's dental maintenance organization (DMO) was to pay half of the amount owed, $1,250,
and Perez was to pay the remaining half of $1,250 in monthly installments of $103 for the next ten months (Perez had
already made two payments of $35 and one payment of $250 at the time of the contract's execution). (2) These special
arrangements were handwritten. On the left margin of the contract, there is a handwritten provision stating: "If patient
discontinues being on DMO regular fees will apply." This modification was not initialed by Perez. In March of 2003,
Froemming refused to provide any further orthodontic services to Melinda until $1,344 was paid by Perez. An account
statement from Froemming's office dated March 26, 2003, reflects that Perez's DMO paid $1,250 and Perez paid $1,550, for
a total of $2,800 paid to Froemming. (3) The charges column adds up to $4,144, leaving a balance owed of $1,344. Perez
filed suit, but Froemming, though duly served with citation, failed to appear or answer. Perez alleged three claims in her
original petition, including deceptive trade practices, breach of contract, and infliction of emotional distress. (4) The trial
court denied the claim for intentional infliction of emotional distress. After default judgment was rendered in the amount of
$96,000, Froemming filed this restricted appeal.
Discussion

 A direct attack on a judgment by restricted appeal must: (1) be brought within six months after the trial court signs the
judgment; (2) by a party to the suit; (3) who did not participate in the actual trial; and (4) the error complained of must be
apparent from the face of the record. Tex. R. App. P. 26.1(c), 30; Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269,
270 (Tex. 1997) (per curiam). A restricted appeal affords an appellant a review of the entire case; the same scope of review
as in an ordinary appeal. Norman Commc'ns, 955 S.W.2d at 270. It is undisputed that Froemming satisfied the first three
elements of a restricted appeal. Thus, the only issue for our consideration is whether there is error apparent from the face of
the record. Id. The face of the record, for purposes of appeal, consists of all the papers on file in the appeal, including the
reporter's record. DSC Fin. Corp. v. Moffitt, 815 S.W.2d 551, 551 (Tex. 1991). Review of the entire case includes a review
of legal and factual insufficiency claims. Petco Animal Supplies, Inc. v. Schuster, 144 S.W.3d 554, 559 (Tex. App.-Austin
2004, no pet.). 

 In deciding a legal sufficiency challenge, "we must view the evidence in a light that tends to support the disputed finding
and disregard evidence and inferences to the contrary." Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex.
2003). A legal sufficiency or "no evidence"

point will be sustained when (a) there is a complete absence of a vital fact; (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of a vital fact. Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). More than a mere scintilla of evidence exists when the
evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions." Id. If the evidence is so weak as to do no more than create a mere surmise or suspicion of its
existence, its legal effect is that it is no evidence. Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex.
1995). 

 Once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set
forth in the petition are deemed admitted, except for the amount of damages. Tex. Commerce Bank, Nat'l Ass'n v. New, 3
S.W.3d 515, 516 (Tex. 1999). If the claimed damages are unliquidated, the rendering court must hear evidence on
damages. Tex. R. Civ. P. 243;Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992). Proof is required only
with respect to damages, and the appellate court cannot consider evidentiary points that contest liability. KH Airport
Concession Mgmt. Servs., L.P. v. C Constr. Co., Inc., No. 04-04-00807-CV, 2005 WL 1638189, at *2 (Tex. App.-San
Antonio July 13, 2005, no pet.). 

DTPA Liability

 In his eighth issue, Froemming complains that the trial court erred in making an award under the DTPA when the
underlying suit merely involved a breach of contract. Again, once a default judgment is taken against a non-answering
defendant, all allegations of fact set forth in the petition are deemed admitted, except for the amount of damages. New, 3
S.W.3d at 516. Because the facts set out in Perez's petition alleged a cause of action under the DTPA, Froemming cannot
now contest his liability. See Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984). Froemming's issue is
overruled. Economic Damages

 In his first issue, Froemming asserts that the trial court erred in awarding Perez $7,000 in economic damages for violations
of the DTPA. Under the DTPA, any false, misleading, or deceptive act in the conduct of any trade or commerce is
unlawful. See Tex. Bus. & Com. Code Ann. § 17.46(a) (Vernon 2002). To recover under the DTPA, a plaintiff must
establish that: (1) she was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading,
or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of
economic damages to the plaintiff. Id. § 17.50(a)(1); Burroughs v. APS Int'l, Ltd., 93 S.W.3d 155, 163 (Tex. App.-Houston
[14th Dist.] 2002, pet. denied). Generally, a false, misleading, or deceptive act has the tendency to deceive an average
ordinary person, even though that person may have been ignorant, unthinking, or gullible. See Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 479-80 (Tex. 1995). A noninclusive list of conduct constituting a "false, misleading,
or deceptive act or practice" is set forth in section 17.46(b) of the statute. SeeTex. Bus. & Com. Code Ann. § 17.46(b). 

 Perez relied to her detriment on Froemming's representations regarding the cost of the braces. At the very least, Froemming
clearly violated section 17.46(b)(11), which prohibits making false or misleading statements of fact concerning the reasons
for, existence of, or amount of price reductions. See Tex. Bus. & Com. Code Ann. § 17.46(b)(11). By making special
payment arrangements in the contract wherein Perez was obligated to pay $1,250, Froemming led her to believe that once
that amount of money was paid, full orthodontic services would be provided to her daughter. Instead, after Perez paid
approximately $1,550, Froemming suspended service until an additional payment of $1,344 was tendered. Melinda was left
with brackets on her teeth that were not removed before her graduation or prom as anticipated and as discussed with Dr.
Froemming. Furthermore, Melinda's teeth were left to revert to their pre-orthodontic condition, and she will have to once
again begin treatment with a new orthodontist. 

 "Economic damages" are defined as "compensatory damages for pecuniary loss, including costs of repair and
replacement." See Tex. Bus. & Com. Code Ann. § 17.45(11). In cases involving misrepresentation, plaintiffs may recover
under either the "out of pocket" measure of damages or the "benefit of the bargain" measure of damages, whichever gives
the plaintiff the greater recovery. See Ford Motor Co. v. Cooper, 125 S.W.3d 794, 798 (Tex. App.-Texarkana 2004, no
pet.). The "out of pocket" measure is the difference between the value of what the plaintiff parted with and the value of
what he or she received. W.O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988). The "benefit of the
bargain" measure of damages is the difference between the value as represented and the actual value received. Leyendecker
& Assocs., Inc. v. Wechter, 683 S.W.2d 369, 373 (Tex. 1984). At the default judgment hearing, Perez testified that she paid
$3,500 to Froemming under the contract and that it would cost her an estimated $3,500 to replace Melinda's braces. This
testimony was sufficient to sustain the award of $7,000 in economic damages. Froemming's issue is overruled. Mental
Anguish

 In his second issue, Froemming asserts that the evidence was legally insufficient to support a finding that Perez suffered
mental anguish. An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has
introduced "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial
disruption in the plaintiff['s] daily routine." See Latham v. Castillo, 972 S.W.2d 66, 69-70 (Tex. 1998); Parkway Co. v.
Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). In the absence of direct evidence, we apply traditional "no evidence"
standards to determine whether the record reveals any evidence of "a high degree of mental pain and distress" that is "more
than mere worry, anxiety, vexation, embarrassment, or anger" to support an award of damages for mental anguish. 
Parkway, 901 S.W.2d at 444. The record must reflect more than the existence of "mere emotions." Id. at 445. 

 Both Melinda and Perez sought damages for mental anguish. While Melinda did not testify at the default judgment
hearing, her mother responded to questions posed by the trial court: (5) 

 The Court: Tell me about this emotional distress. Tell me why you feel like this is more than just - - you know, just a huge
hassle. Tell me how this is emotional distress.


 Lucy Perez: Well, it was - - I was very angry because they didn't come up with what they said they were going to do.

 The Court: Right.

 Lucy Perez: I was angry because brackets were supposed to come off before graduation pictures, graduation dance, and all
of that that she was looking forward [to] and that didn't happen. Because of that, Melinda [had a] very low self-esteem. 
She was very angry at me because I couldn't do anything more for her, and, you know, fearful of infections because the
doctor waited for so long with no treatment. 

 The Court: And they wouldn't take the brackets out? They wouldn't do anything?

 Lucy Perez: Nothing. Unless I paid the full amount, he would not take them out.

 The Court: All right. And so he wouldn't take the brackets out so she was suffering. It was hurting. You were worried
about infection. She had bad pictures for her prom. 

After reviewing the record, we cannot say that Perez met the high standard for mental anguish established by existing
precedent. Anger and low self-esteem are "mere emotions" which do not reflect "a high degree of mental pain and distress"
and do not amount to a "substantial disruption" of a daily routine. Parkway, 901 S.W.2d at 444-45. In view of the high
standard established byParkway, we hold that the evidence was insufficient to support a finding that Perez suffered
compensable mental anguish. Froemming's issue is sustained, and judgment is rendered that Perez is not entitled to recover
damages for mental anguish. Intentional Conduct and Treble Damages

 In addition to economic damages, a consumer who prevails under the DTPA may recover additional damages if the
defendant's conduct was committed knowingly or intentionally. Tex. Bus. & Com. Code Ann. § 17.50(b)(1). "Knowingly"
is defined as actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the
act or practice giving rise to the consumer's claim. Id. § 17.45(9). "Intentionally" means actual awareness of the falsity,
deception, or unfairness of the act or practice giving rise to the consumer's claim, coupled with the specific intent that the
consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. Id. §
17.45(13). In addition to mental anguish damages, when conduct is committed knowingly, the consumer may be awarded
up to three times the amount of economic damages. Id. § 17.50(b)(1). When the conduct is committed intentionally, the
consumer may recover up to three times the amount of damages for mental anguish and economic damages. Id. 

 When a default judgment on an unliquidated claim is taken, all allegations of fact in the petition are deemed admitted,
except the amount of damages. New, 3 S.W.3d at 516. Furthermore, the plaintiff is required to prove the connection
between the liability and the injury, despite the defendant's default. See Henry S. Miller Co. v. Hamilton, 813 S.W.2d 631,
634 (Tex. App.-Houston [1st Dist.] 1991, no writ). Although Froemming, by his failure to answer, admitted he was aware
of his conduct, he did not further admit that the extent of his knowledge or intent warranted the automatic imposition of
treble damages. Id; Fleming Mfg. Co., Inc. v. Capitol Brick, Inc., 734 S.W.2d 405, 409 (Tex. App.-Austin 1987, writ ref'd
n.r.e.). Intent, however, may be inferred from objective manifestations that indicate that a defendant acted intentionally or
from facts showing that a defendant acted with flagrant disregard of prudent and fair business practices. Tex. Bus. & Com.
Code Ann. § 17.45(13). At the default judgment hearing, Perez testified as to Froemming's flagrant disregard of prudent
and fair business practices. Specifically, she testified that when she signed the contract for her daughter's braces, she
believed she was doing business with Dr. Gerald L. Froemming, D.D.S., Inc., a legal entity, when in fact, Froemming's
corporate status had been forfeited and did not exist as of the date of the contract's execution. Additionally, Perez testified
that the contract she signed included handwritten notations in the margin. Perez was not asked to, nor did she, initial these
notations to indicate her understanding or assent. Because these notations modified the terms of the contract, Froemming
flagrantly disregarded prudent and fair business practices by failing to ensure that Perez reviewed the notations and initialed
her assent thereto. Although Perez is not entitled to recover mental anguish damages for the reasons previously given, the
evidence was sufficient to show that Froemming acted intentionally, and accordingly, we sustain the trial court's trebling of
the economic damages for a total of $21,000. Double Recovery

 In his seventh issue, Froemming argues that the trial court erred in awarding $7,000 for economic damages under the
DTPA and for breach of contract, thus violating the "one satisfaction rule." Section 17.43 of the DTPA states that although
DTPA remedies are in addition to remedies provided by other laws, no recovery shall be permitted under the DTPA and
under another law for the same act or practice. Tex. Bus. & Com. Code Ann. § 17.43. A double recovery exists when a
plaintiff obtains more than one recovery for the same injury. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex.
1991). The damages awarded Perez under the breach of contract were to compensate her for out of pocket expenses and
replacement costs associated with Melinda's braces. Perez is recovering for the same injury under the DTPA. Since we are
required to award her the highest recovery for the same injury under alternate theories, we will eliminate the recovery under
the breach of contract action. See Birchfield v. Texarkana Mem'l Hosp., 747 S.W.2d 361, 367 (Tex. 1987). Because we
have concluded that Perez is not entitled to recover for both breach of contract and DTPA violations for the same injury, we
do not address Froemming's fourth issue, which states that the trial court erred in finding that Perez was entitled to $7,000
in damages on the breach of contract claim. 

Contractual Privity

 Froemming complains that the trial court erred in awarding a "joint judgment" because Melinda had no contractual privity
with Froemming because she did not sign the August 10, 2001 contract. The plaintiff need not establish contractual privity
with the defendant in a DTPA claim. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996). The plaintiff must
qualify as a consumer by satisfying two requirements: (1) she must have sought or acquired the goods or services by
purchase or lease; and (2) the goods or services must form the basis of the complaint. See Tex. Bus. & Com. Code Ann. §
17.45(4); Bohls v. Oakes, 75 S.W.3d 473, 479 (Tex. App.-San Antonio 2002, pet. denied). There is no argument by
Froemming that either Perez or Melinda lacked status as a consumer. A party's consumer status does not turn on whether
there is a contractual relationship with the defendant, but rather, it is determined by the party's relationship to the
transaction. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 815 (Tex. 1997). Consequently, a person does
not have to be a direct purchaser in order to qualify as a DTPA consumer. Lukasik v. San Antonio Blue Haven Pools, Inc.,
21 S.W.3d 394, 401 (Tex. App.-San Antonio 2000, no pet.). Because the contract for orthodontic services was entered into
for Melinda's benefit, she qualifies as a consumer under the DTPA and contractual privity with Froemming is not required.
Froemming's issue is overruled. 

Attorney's Fees

 The trial court awarded Perez $5,000 in attorney's fees. On appeal, Froemming maintains that there is no evidence of
attorney's fees because there was no testimony presented at the hearing on the issue of attorney fees. Under the DTPA, each
consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees. Tex. Bus. & Com. Code
Ann. § 17.50(d). In order to be a "prevailing party" entitled to attorney's fees under the DTPA, a party must recover money
damages. George Grubbs Enters., Inc. v. Bien, 881 S.W.2d 843, 865 (Tex. App.-Fort Worth 1994), rev'd on other grounds,
900 S.W.2d 337 (Tex. 1995). As a general rule, the party seeking to recover attorney's fees carries the burden of proving
that the fees are "reasonable and necessary" for the prosecution of the suit. Sterling, 822 S.W.2d at 10. Additionally, the
trial court "may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without
receiving further evidence." Tex. Civ. Prac. & Rem. Code §§ 38.001(8), 38.004(1) (Vernon 1997). Even where the trial
court does not announce that it is taking such judicial notice, the appellate court may presume that it did so. See Lefton v.
Griffith, 136 S.W.3d 271, 279-80 (Tex. App.-San Antonio 2004, no pet.). In this case, Perez made a proper claim for
attorney's fees, the proceeding was before the court, and we presume the trial court took judicial notice of the usual and
customary attorney's fees. Id. Accordingly, we hold that the evidence of attorney's fees is sufficient to support the award.
Perez is also entitled to an additional award of $5,000 in attorney's fees for a successful appeal to this court. 

Conclusion

 The trial court's judgment awarding $21,000 for mental anguish and trebling the sum of the economic and mental anguish
damages for a total of $84,000 is reversed and judgment is rendered that Perez is not entitled to recover damages for mental
anguish. Judgment in the amount of $7,000 for breach of contract is also reversed, and judgment is rendered that Perez is
not entitled to recover breach of contract damages. The trial court's judgment is modified to reflect trebling of the $7,000
economic damages for a total of $21,000. As modified, the judgment is affirmed in all other respects. 

 Catherine Stone , Justice



 

1. Dr. Gerald Froemming, D.D.S., Inc. had its corporate status forfeited for failure to pay state franchise taxes on March
23, 2001. 

2. While we realize that half of $3,919 is not $1,250, the "special arrangements" made in the Froemming-Perez contract
stated as follows: "DMO to pay 50% / Resp. party to pay 50%. 50% = $1,250.00 - $70 (pd. to date) = $1180.00 - $250.00 =
$930.00 + $100 (finance) = $1,030.00 ÷ 10 [=] $103.00/month." 

3. We note that Perez's total payments to Froemming include payments for late payment charges ($150), new brace due to
damage charges ($50), and cancelling appointment without twenty-four hour's notice charge ($10), as well as payments
tendered on or before the contract was executed on August 10, 2001 ($320). 

4. The specific provisions upon which Perez based her DTPA claims are as follows: (2) causing confusion or
misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or
misunderstanding as to affiliation, connection, or association with, or certification by, another; (9) advertising goods or
services with intent not to sell them as advertised; (11) making false or misleading statements of fact concerning the reasons
for, existence of, or amount of price reductions; (12) representing that an agreement confers or involves rights, remedies, or
obligations which it does not have or involve, or which are prohibited by law; (24) failing to disclose information
concerning goods or services which was known at the time of the transaction if such failure to disclose such information
was intended to induce the consumer into a transaction into which the consumer would not have entered had the
information been disclosed; (25) using the term "corporation," "incorporated," or an abbreviation of either of those terms in
the name of a business entity that is not incorporated under the laws of this state or another jurisdiction. Tex. Bus. & Com.
Code Ann. § 17.46(b)(2), (3), (9), (11), (12), (24), (25) (Vernon 2002).

5. After hearing the following testimony, the trial court struck Melinda's claim for intentional infliction of emotional
distress; however, we also use this testimony to gauge whether an award for mental anguish damages is justified.